UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FREE SPEECH COALITION, INC., *et al.*,          )
                                                )
                     Plaintiffs,                )
                                                )
          v.                                    )
                                                )     No. 1:24-cv-00980-RLY-MG
TODD ROKITA, in his official capacity as the    )
Attorney General of the State of Indiana,       )
                                                )
                     Defendant.                 )


## <u>NOTICE OF APPEAL</u>

Pursuant to 28 U.S.C. § 1292(a)(1) and Federal Rule of Appellate Procedure 3, notice is

hereby given that Defendant Todd Rokita, in his official capacity as the Attorney General of the

State of Indiana, appeals to the U.S. Court of Appeals for the Seventh Circuit the District Court's

Entry Granting Plaintiffs' Motion for Preliminary Injunction, Dkt. 35, and Order Enjoining

Defendant from Enforcing Senate Bill 17, Dkt. 36.

                                        Respectfully submitted,

                                        Theodore E. Rokita
                                        Indiana Attorney General

                              By:     /s/ James A. Barta
                                        James A. Barta
                                        Solicitor General

Office of the Indiana Attorney General
IGC-South, Fifth Floor                  Jenna M. Lorence
302 West Washington Street              Deputy Solicitor General
Indianapolis, Indiana 46204-2770
Telephone: (317) 232-0709
Fax: (317) 232-7979                     Katelyn E. Doering
Email: James.Barta@atg.in.gov           Deputy Attorney General

                                        *Counsel for Defendant*

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FREE SPEECH COALITION, INC.,    )
*et al.*,    )
    )
    Plaintiffs,    )
    )
    v.    )    No. 1:24-cv-00980-RLY-MG
    )
TODD ROKITA, in his official capacity as the    )
Attorney General of the State of Indiana,    )
    )
    Defendant.    

## DOCKETING STATEMENT OF APPELLANT

In compliance with Federal Rule of Appellate Procedure 3 and Seventh Circuit Rule 3(c), Defendant Attorney General Todd Rokita submits this Docketing Statement.

1.    **Statement of District Court Jurisdiction:** Plaintiffs Free Speech Coalition, Inc., Aylo Premium Ltd, Aylo Freesites Ltd, WebGroup Czech Republic, a.s., NKL Associates, s.r.o., Sonesta Technologies, s.r.o., Sonesta Media, s.r.o., Yellow Production, s.r.o., Paper Street Media, LLC, Neptune Media, LLC, MediaME SRL, and Midus Holdings, Inc., filed this action for declaratory and injunctive relief and damages, alleging that Indiana's Senate Enrolled Act 17 ("S.E.A. 17") violates the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, as well as Section 230 of the Communications Decency Act, 47 U.S.C. § 230. S.E.A. 17 requires adult oriented website operators to verify users' ages to ensure users are over the age of 18. Ind. Code § 24-4-23 *et seq.* On June 10, 2024, Plaintiffs moved for a preliminary injunction on the First Amendment claim. Dkt. 4. Plaintiffs' claim raises a federal question concerning civil rights sufficient to confer jurisdiction under 28 U.S.C. §§ 1331 and 1343. Defendant has disputed whether Plaintiffs have standing. Dkt. 30 at 7–14.

1

2.      **Statement of Appellate Jurisdiction:** The Court of Appeals has jurisdiction over this appeal under 28 U.S.C. § 1292(a)(1) because this is an appeal from a preliminary injunction. On June 28, 2024, the district court issued an order granting plaintiffs' motion for a preliminary injunction, Dkt. 35, and preliminarily enjoined Defendant from enforcing Senate Enrolled Act 17, Dkt. 36. A timely notice of appeal from the order granting the preliminary injunction and preliminary injunction is being filed contemporaneously with this docketing statement on July 5, 2024. This is not a direct appeal from the decision of a magistrate judge. No Rule 59(e) Motion to Alter or Amend Judgment or other motion tolling the time for filing a Notice of Appeal has been filed. The merits of this case remain pending in the district court.

3.      **Prior or Related Appellate Proceedings:** There are no prior or related appellate court proceedings.

4.      **Current Occupants of Offices Appearing in Their Official Capacities:** The current Attorney General of the State of Indiana is Todd Rokita.

Respectfully submitted,

Theodore E. Rokita
Indiana Attorney General

By:    /s/ James A. Barta
James A. Barta
Solicitor General

Office of the Indiana Attorney General
IGC-South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204-2770
Telephone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov

Jenna M. Lorence
Deputy Solicitor General

Katelyn E. Doering
Deputy Attorney General

*Counsel for Defendant*

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FREE SPEECH COALITION, INC., *et al.*,    )
                                          )
                Plaintiffs,               )
                                          )
        v.                                )        No. 1:24-cv-00980-RLY-MG
                                          )
TODD ROKITA, in his official capacity as the )
Attorney General of the State of Indiana, )
                                          )
                Defendant.                )

**ENTRY GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Indiana's legislature sought to limit minors' ability to access material it believed harmful to their development.  To accomplish that goal, the legislature imposed age verification requirements on websites that contain at least one-third content deemed to be harmful to minors.  The legislature empowered the Defendant Attorney General of Indiana, as well as Indiana's citizens, to enforce the regulations through a lawsuit for an injunction and civil penalties that can reach as high as $250,000.

Though these rules will not go into effect until July 1, 2024, Plaintiffs,[1] who are a trade association representing adult industry performers and websites, as well as the companies operating adult websites, seek to enjoin the new rules.  In their view, the new rules violate the First Amendment (Count I), Fourteenth Amendment (Count II), Eighth

---

[1] Plaintiffs are Free Speech Coalition, Inc.; Aylo Premium Ltd.; Aylo Freesites Ltd.; Webgroup Czech Republic, A.S.; Paper Street Media, S.R.O.; Sonesta Technologies, S.R.O.; Sonesta Media, S.R.O.; Yellow Production, S.R.O.; Paper Street Media, LLC; Neptune Media, LLC; Mediame SRL; and Midus Holdings, Inc.

Amendment (Count III), Fifth Amendment (Count IV), and the Supremacy Clause (Count V).[2]  To that end, Plaintiffs move for a preliminary injunction to enjoin the rules while this case proceeds, although Count I is the only basis Plaintiffs use to support their request.  For the reasons discussed below, the court **GRANTS** Plaintiffs' motion for a preliminary injunction.

## I.    Background

Indiana Senate Bill 17, codified at Indiana Code § 24-4-23, *et seq.* ("The Act"), is set to go into effect on July 1, 2024.  The Act requires all adult oriented websites to "use[] a reasonable age verification method" to prevent minors "from accessing the adult oriented website."  Ind. Code § 24-4-23-10.  A knowing or intentional failure to use these age verification requirements opens an adult oriented website to liability in the form of damages and an injunction from the parent or guardian of a minor who accesses the website, any other person, or from Indiana's Attorney General bringing an enforcement action.  *Id.* §§ 24-4-23-11, -12, -15.  Websites impacted by age verification requirements, like the Plaintiffs' websites, see approximately 80% of their viewership leave to peruse other explicit websites.  (Filing No. 30-6 at 5 (discussing how adult websites complying with age verification "lost substantial traffic" while non-compliant adult sites "saw a sharp uptick in traffic")).  This is not surprising as 66% of "Americans are not comfortable sharing their identification document[s] . . . [or] biometric information" with

---

[2] Plaintiffs also ask the court to declare the new rules unconstitutional pursuant to 28 U.S.C. §§ 2201–02, which they title "Count VI."

online "platforms."  (Filing No. 4-10, Hudson Decl. Ex. 1 at 7).  And 70% are

uncomfortable with their children using such methods.  (*Id.*).

To verify users' ages, adult oriented websites must request the user submit a

driver's license[3] or require the user to submit personally identifying information to an

independent third-party age verification service.  *Id.* § 24-4-23-5, -7; *id.*; § 9-13-2-103.4.

Third-party age verification services that use methods other than driver's license

identification are ineffective because they pose too high an error rate.  (*See, e.g.*, Filing

No. 30-3; Allen Decl. ¶ 14).  For example, the most advanced form of facial estimation

has a mean error of 1 to 1.5 years, meaning that roughly on average, children at 16.5

years of age will be able to access pornography and adults just under 19.5 years of age

will be unable to access constitutionally protected indecent speech, particularly if they

lack a driver's license.  (*Id.*).  Age verification requirements are also quite costly, as

verifying even 5 million users a month can cost upward of $7 million.[4]  (Filing No. 4-1,

Boden Decl. ¶¶ 10–12).  The Act requires an adult oriented website to "use commercially

reasonable methods to secure all information collected and transmitted."  Ind. Code § 24-

---

[3] Of course, not every adult has a driver's license, particularly an adult who just turned 18.  (*See* Sonnier Decl. at 60 (discussing how "using credit cards, passports, and driving licenses exclude the economically disadvantaged" as not all people have access to those documents)).

[4] The Attorney General does not submit evidence directly disputing this.  (*See* Filing 30-3, Allen Decl. ¶ 26 (admitting he lacks knowledge about "the specific pricing" of age verification)). Instead, the Attorney General suggests that some verification services may have a low cost per user.  (*Id.*).  This would still be astronomically expensive if applied at the volume certain adult-websites see.  (*See* Filing No. 30-6 at 2 (noting Pornhub receives 115 million visits per day, which would cost $13.8 million a day to verify at 12 cents a user)).  Of course, the Act only applies to Indiana users, but the cost of this verification method is high regardless.

4-23-14.  It also ensures that identifying information collected as part of age verification cannot be retained upon penalty of damages or injunctive relief.  *Id.* § 24-4-23-13.

These requirements apply to any "publicly accessible website that publishes material harmful to minors, if at least one third (1/3) of the images and videos published on the website depict material harmful to minors."  *Id.* § 24-4-23-1.  Newspapers and news services, however, are excluded from this definition and can publish as much material harmful to minors as desired without triggering any age verification requirements, just like internet providers and search engines.  *Id.* § 24-4-23-2.

The Act also defines material harmful to minors as material that (1) "describes or represents in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse"; (2) "appeals to the prurient interest in sex of minors" when considered as a whole; (3) "is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors"; and (4) "lacks serious literary, artistic, political, or scientific value for minors" when considered as a whole.  Ind. Code § 35-49-2-2; *id.* at § 24-4-23-3 ("'Material harmful to minors' means matter or a performance described in IC 35-49-2-2.").

Plaintiffs are websites and production companies that produce content to place on publicly accessible websites that contain over 1/3 material that is harmful to minors.  A decent amount of the content is pornographic in nature and almost all of it is free to view. (Filing No. 30-2, Glogoza Decl. ¶¶ 6–12; Filing No. 4-2, Andreou Decl. ¶ 3).  But every Plaintiff website contains a significant amount of non-obscene materials that range from "substantial amounts" of "clothed" and "partially clothed modeling galleries" to "podcasts

by creators in the community discussing their work and issues faced by the [adult-entertainment] community" and "comedic, non-pornographic content playing on industry tropes."  (Filing No. 4-3, Seifert Decl. ¶ 6; Filing No. 4-4, Muhamed Decl. ¶ 5; Andreou Decl. ¶ 12).

Additionally, at least one Plaintiff website, Pornhub.com, runs a blog on the website where it discusses the latest developments in the adult-entertainment industry including arguments for what regulations legislatures should pass to address minors viewing obscene content.  (Filing No. 30-6 at 5-6 (explaining "Pornhub's blog" argued age verification "laws have not only failed at protecting minors, but have introduced further harm by displacing traffic to sites with few or zero Trust and Safety measures" and explained legislatures should "implement laws that actually protect the safety and security of users," such as device-based filtering laws)).  Plaintiffs bring a First Amendment challenge on the theory that the Act substantially burdens this non-obscene speech from reaching consenting adults.  (Filing No. 4 at ¶ 1).  Other websites that host constitutionally protected speech, such as Reddit.com, are not burdened by the Act because they are only around 24% obscene material at the most.  (Filing No. 9, Sonnier Decl. ¶ 9).[5]  That website has entire communities—known as "subreddits"—dedicated to sexual material.  (*Id.* ¶ 59 (describing the "gonewild" subreddit)).

---

[5] Richard Sonnier is an expert with technical expertise in the areas of Internet technologies including privacy controls, age verification controls, filtering and blocking, and cybersecurity. After review of his CV and experience, the court finds that he meets the requirements of Federal Rule of Evidence 702 and is qualified to give expert testimony on the internet, privacy controls, age verification controls, filtering and blocking, and cybersecurity.

Some background on the technology at issue is helpful for understanding the different options available for ensuring a user is of age to view obscene content.  When a user connects to a website, their computer will create a "packet" of content that it will direct to the website's digital address.  (*Id.* ¶ 5).  The user's computer will then send that packet through the internet to the website's servers.  (*Id.* ¶ 6).  Along the way, the packet will travel through a variety of different servers in many different locations before finally arriving at the website.  (*Id.*).  The website's server will open the packet and send a "reply" packet if the user is asking to see information, images, or videos.  (*Id.* ¶ 5).  The same process is repeated in reverse, and the user's computer opens the "packet" to display the website on their screen.  (*Id.* ¶¶ 5–6).

Along the way, the packet will be flagged as having an "IP address," which is a notation of where the packet came from.  (*See id.* ¶ 12 (calling this a "computer address")).  In the context of Indiana's law, if a website determines the IP address came from Indiana, it will know to require the age verification processes required by the Act.  (*Id.*).

But there is a problem: a computer's IP address is not like a return address on an envelope because an IP address is not inherently tied to any location in the real world but consists of a unique string of numbers written by the Internet Service Provider for a large geographic area.  (*See id.* ¶¶ 12–13).  This means that when a user connects to a website, the website will only know the user is in a circle with a radius of 60 miles.  (*Id.* ¶ 14).  Thus, if a user near Springfield, Massachusetts, were to connect to a website, the user might be appearing to connect from neighboring New York, Connecticut, Rhode Island,

New Hampshire, or Vermont.  (*Id.*).  And a user from Evansville, Indiana, may appear to be connecting from Illinois or Kentucky.  The ability to determine where a user is connecting from is even weaker when using a phone with a large phone carrier such as Verizon with error margins up to 1,420 miles.  (*Id.* ¶¶ 16, 19).  Companies specializing in IP address geolocation explain the accuracy of determining someone's state from their IP address is between 55% and 80%.  (*Id.* ¶ 17).  Internet Service Providers also continually change a user's IP address over the course of the day, which can make a user appear from different states at random.  (*Id.* ¶ 18).

Even when the tracking of an IP address is accurate, however, internet users have myriad ways to disguise their IP address to appear as if they are located in another state. (*Id.* ¶ B ("Website users can appear to be anywhere in the world they would like to be.")). For example, when a user connects to a proxy server, they can use the proxy server's IP address instead of their own (somewhat like having a PO box in another state).  (*Id.* ¶ 22). ProxyScrape, a free service, allows users to pretend to be in 129 different countries for no charge.  (*Id.*).  Virtual Private Network ("VPN") technology allows something similar by hiding the user's IP address to replace it with a fake one from somewhere else.  (*Id.* ¶ 23).

All these methods are free or cheap and easy to use.  (*Id.* ¶¶ 21–28).  Some even allow users to access the dark web with just a download.  (*Id.* ¶ 21).  One program, TOR, is specifically designed to be as easy to use as possible to ensure as many people can be

as anonymous as possible.  (*Id.*).  It is so powerful that it can circumvent Chinese censors.[6]  (*Id.*).

Other workarounds include torrents, where someone can connect directly to another computer—rather than interacting with a website—to download pornography.  (*Id.* ¶ 29).  As before, this is free.  (*Id.*).  Minors could also just search terms like "hot sex" on search engines like Bing or Google without verifying their age.  (*Id.* ¶ 32–33).  While these engines automatically blur content to start, (Glogoza Decl. ¶¶ 5–6), users can simply click a button turning off "safe search" to reveal pornographic images, (Sonnier Decl. ¶ 32).  Or a minor could make use of mixed content websites below the 1/3 mark like Reddit and Facebook.  (*Id.* ¶ 34).

With this background, it is easy to see why age verification requirements are ineffective at preventing minors from viewing obscene content.  (*See id.* ¶¶ 14–34 (discussing all the ways minors could bypass age verification requirements)).  The Attorney General submits no evidence suggesting that age verification is effective at preventing minors from accessing obscene content; one source submitted by the Attorney General suggests there must be an "investigation" into the effectiveness of preventive methods, "such as age verification tools."  (Filing No. 30-7 at 6).

Plaintiffs propose an alternative: filtering and blocking software.  This offers advantages over age verification requirements.  (Sonnier Decl. ¶¶ 47–64).  Internet

---

[6] Filtering software can prevent access to applications like TOR and other alternative web browsers that might allow minors to circumvent the application's protections.  (Sonnier Decl. ¶ 61).

filtering has kept up with rapidly changing internet technologies.  (*Id.* ¶¶ 47, 50

(describing how new technology like AI is making filtering more effective with some

highly advanced technologies being free)).  In many cases, it is available with no

additional cost and is built into the software of many computers (and smartphones).  (*Id.*

¶¶ 49, 64).  These tools also allow parents to adjust what their children can see and when,

such that younger children might be restricted from more websites than a child

immediately before their 18th birthday.  (*Id.* ¶ 52).  These tools will block access to

Plaintiffs' websites, but only on devices where the application is installed; parents and

adults are unaffected.  (*Id.* ¶ 60).  The Plaintiff websites contain a specific "Restricted to

Adults" tag that is universally recognizable for device-level parental controls and filtering

software so that the websites are automatically blocked.  (Boden Decl. ¶ 12; Andreou

Decl. ¶¶ 4, 10; Seifert Decl. ¶ 15; Filing No. 4-4, Muhamed Decl. ¶¶ 4, 9; Filing No. 4-

11, Craveir-Romao Decl. ¶¶ 5, 10).  This technology also prevents users from viewing

explicit material on Google, Bing, and Reddit.  (*Id.* ¶¶ 58–59).

   Filtering is not perfect, however.  For one, filtering software is not widely used

(likely because Indiana has not required its use as suggested by the Plaintiffs).  (Allen

Decl. ¶ 41).  It is also possible to over block content with filtering software.  (*Id.* ¶ 46).

Finally, children can find ways to get around content-blocking, though the methodology

requires more elbow-grease and a lot more steps than circumventing age verification

processes.  (*Id.* ¶ 43 n.5 (describing a "three year[]" long "cat-and-mouse game" between

a father and his 11-year-old daughter to keep her off TikTok requiring multiple

circumvention methods)).

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Instead, the issuance of an

injunction is committed to the "sound discretion" of the district court.  *Weinberger v.*

*Romero-Barcelo*, 456 U.S. 305, 312 (1982).  In exercising that discretion, the court is

guided by four factors: whether the plaintiff has shown (1) they are "likely to succeed on

the merits," (2) they are likely to suffer irreparable harm in the absence of preliminary

relief, (3) the balance of equities tips in their favor, and (4) that an injunction serves the

public interest.  *Winter*, 555 U.S. at 20.  The court ordinarily employs a "sliding scale"

approach when balancing these factors such that the more likely the plaintiffs are to win,

the less heavily the balance of harms must weigh in their favor and vice versa.  *Roland*

*Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984); *see also Korte v.*

*Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).

In the First Amendment context, however, the analysis is often streamlined as "the

likelihood of success on the merits will often be the determinative factor."  *Joelner v.*

*Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004).  "That is because even

short deprivations of First Amendment rights constitute irreparable harm, and the 'balance

of harms normally favors granting preliminary injunctive relief because the public

interest is not harmed by preliminarily enjoining the enforcement of a statute that is

probably unconstitutional.'"  *Higher Soc'y of Ind. v. Tippecanoe County*, 858 F.3d 1113,

1116 (7th Cir. 2017) (quoting *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589–90 (7th Cir.

2012)).

## III.     Discussion

The court begins by determining whether the Plaintiffs have Article III standing to bring a pre-enforcement facial challenge to the age verification requirements.  Because the court concludes two plaintiffs have standing, the court proceeds to the preliminary injunction factors.  *See Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981) ("Because we find California has standing, we do not consider the standing of the other plaintiffs."); *see also Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 562 n.9 ("Because of the presence of this plaintiff, we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit.").  As those factors counsel issuing a preliminary injunction, the court finally considers the scope of that injunction.

### A.     Standing

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  Standing to sue is a critical component of that limitation.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Because "the traditional role of Anglo-American courts" is "to redress or prevent actual or imminently threatened injury to persons caused by private or official violation[s] of the law," plaintiffs must establish they have suffered an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury.  *Summers v. Earth Isl. Inst.*, 555 U.S. 488, 492–93 (2009).

11

This case involves a pre-enforcement challenge, meaning Plaintiffs are not currently subject to the law because it does not go into effect until July 1, 2024.  "Pre-enforcement challenges . . . are within Article III."  *Brandt v. Village of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010).  This is especially true for challenges under the First Amendment.  *Smirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010) ("A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment . . . .").  The "existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper, because a [high] probability of future injury counts as 'injury' for the purpose of standing."  *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010); *see also Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)

Organizations like the Free Speech Coalition have standing "to sue on their own behalf for injuries they have sustained."  *Haves Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982).  They also "have standing solely as the representative of its members." *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 282 (1986).  Standing as a representative requires three things: (1) a member would have standing to sue in their own right; (2) the interests the organization seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *Id.*; *see also Warth v. Seldin*, 422 U.S. 490, 511 (1986).

Applying these principles makes clear Free Speech Coalition's members—like Paper Street Media, LLC—have standing to seek an injunction to enjoin the Act.  Free Speech Coalition represents "filmmakers, producers, distributors, wholesalers,

12

manufacturers, retailers, internet platforms, writers, educators, and other creative artists" involved in the adult industry.  (Boden Decl. ¶¶ 3–4).  Paper Street Media, the operator of multiple adult entertainment websites under the title "the TeamSkeet network," is being required to implement age verification requirements that will cost a significant amount of money to implement.  (Muhamed Decl. ¶ 3; Boden Decl. ¶¶ 7–11).  This is the archetypical pocketbook injury-in-fact that satisfies Article III.  *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'").  It also faces the chilling effect of the Attorney General imminently bringing suit to enforce the mandatory age verification requirements of the Act, which supports standing.  *Bell v. Keating*, 697 F.3d 445, 453–54 (7th Cir. 2012) ("Chilled speech is, unquestionably, an injury supporting standing" so long as the plaintiff challenges an "exercise of government power [that is] regulatory, proscriptive, or compulsory in nature, and [he] was either presently or prospectively subject to the regulations, proscriptions, or compulsions that he was challenging." (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972))).  Because the age verification requirements are enforced by the Attorney General, who may be stopped from enforcing the regulations with an injunction, traceability and redressability are satisfied.[7]

The Attorney General argues other Plaintiff websites like Aylo Freesites Ltd. lack standing because "[f]oreign organizations operating abroad do not possess rights under the U.S. Constitution."  *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S.

---

[7] This same analysis would give standing to all of the website-based Plaintiffs.

430, 438 (2020).  Because Aylo Freesites, for example, is a foreign corporation operating in the Cyprus, he argues, it lacks First Amendment rights.  This fails to demonstrate a lack of standing for two reasons.  First, this is a merits question as it goes to whether the substantive law protects Aylo Freesites rather than whether it has suffered an injury-in-fact: Aylo Freesites will suffer the pocketbook injury even if it lacks substantive First Amendment rights.[8]  Second, Aylo Freesites is sufficiently operating in the United States to have First Amendment rights it.  *See, e.g.*, *id.* ("[F]oreign citizens *in the United States* may enjoy certain constitutional rights." (emphasis in original)).  Were the foreign not operating in the United States, the Act could not apply to it.  The Attorney General argues the Act does apply to foreign websites and must necessarily concede those websites can raise its own First Amendment rights.  This argument also overlooks the websites' ability to vindicate the First Amendment rights of its Indiana visitors through a facial challenge.  *See Paxton*, 95 F.4th at 306 (Higginbotham, J., concurring in part and dissenting in part).

The Attorney General also takes issue with the remedy, arguing that an injunction will not redress the harm suffered by Plaintiffs.  That is because the Act contains a citizen suit provision to allow Indiana citizens to enforce the Act and those non-party citizens

---

[8] Indiana also suggests Aylo Freesites lacks standing because it will block users connecting to its website from Indiana instead of complying with the law and expending compliance costs.  But being forced to remove itself from the Indiana market due to regulation is still an injury-in-fact because Aylo Freesites will lose users from its lack of access to the Indiana market.

cannot be enjoined by the judgment.[9]  But all the remedy need do is redress the injury-in-fact.  *See Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (emphasizing that the relief only needs to remedy "the alleged injury in fact" (quoting *Vt. Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000))); *see also 281 Care Comm'n v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011) (explaining a plaintiff "need not show that a favorable decision will relieve his 'every' injury") (cleaned up).  The injury-in-fact here is the chilling effect of a suit by the Attorney General.  Enjoining the Attorney General from bringing suit remedies that harm.

Consider *Whole Women's Health v. Jackson*, 595 U.S. 30 (2021).  There, the Supreme Court addressed a plaintiff's standing to bring suit against a law that contained a citizen suit provision.  *Id.* at 30.  The Court concluded that the plaintiffs did not have standing to sue Judges who would hear the citizen suit, and they did not have standing to sue the court clerks who would process the filings.  *Id.* at 39–45.  However, the plaintiffs did have standing to sue state officials who would be part of enforcing the allegedly unconstitutional scheme even though the citizens who might be bringing the suits were

---

[9] It is not clear that this matters because this is a facial challenge.  To be sure, the only party to be bound by any injunction is the Defendant, but "[f]acial unconstitutionality as to one means facial unconstitutionality as to all, regardless of the fact that the injunctive portion of the judgment directly adjudicated the dispute of only the parties before it."  *Mulholland v. Marion Cnty. Elec. Bd.*, 746 F.3d 811, 819 (7th Cir. 2014); *see also Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011) (explaining "[t]he remedy" in a facial attack "is necessarily directed at the statute itself and *must* be injunctive and declaratory" such that "the statute is wholly invalid and cannot be applied *to anyone*") (emphasis in original); *John Does No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (explaining in a facial challenge any injunction would "reach beyond the particular circumstances of the[] plaintiffs").  Indeed, a facial challenge would allow the court to determine whether the Act could be constitutionally applied "to different parties and different circumstances from those at hand," such as in the case of a citizen suit.  *Sabri v. United States*, 541 U.S. 600, 609 (2004).

not parties.  *Id.* at 47 (finding standing because "it appears that the licensing defendants do have authority to enforce" the law).  The same is true here: there is no Article III infirmity in suing for injunctive relief against a state official charged with enforcing an allegedly unconstitutional scheme.

Free Speech Coalition may also represent its members.  Its purpose is to defend adult-entertainment websites from regulation that may violate the First Amendment. (Boden Decl. ¶ 3).  The interests protected by this suit are thus germane to the Free Speech Coalition's purpose.  Further, the First Amendment claim and its injunctive and declaratory remedies do not require individualized proof, which means the participation of individual members is not required.  *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 344 (1977) ("[N]either the interstate commerce claim nor the request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context.").

Indiana argues Free Speech Coalition has failed to identify a specific member of its organization that has suffered an injury-in-fact, which precludes finding representative standing.  But the specific identification requirement does not apply "where all the members of the organization are affected by the challenged activity," which is true here. *Summers*, 555 U.S. at 499.  Adult-entertainers have their speech burdened by not being able to reach the same adult audience; production companies face the same problem (which affects their production staff); and websites are subject to suits under the Act.  In any event, Paper Street Media, a specifically identified website member of the Free Speech Coalition, has standing to bring suit.  (*See* Filing No. 31-1, Boden Rebuttal Decl.

¶ 3 (identifying Paper Street Media, LLC as a member in addition to Aylo Freesites, Ltd.)).

### B.    Likelihood of Success on the Merits

Indiana's age verification requirements are likely unconstitutional.  In four opinions between 1989 and 2004, the Supreme Court laid out the First Amendment standards applicable to regulating pornographic and pornographic-adjacent material transmitted through wires into private homes (*i.e.*, through the internet, telephone lines, and television lines).  *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989) (holding that strict scrutiny applied to a statute that criminalized "dial-a-porn" services and striking down the statute because it "was not sufficiently narrowly drawn to serve" the purpose of "protecting children from exposure to indecent dial-a-porn messages"); *Reno v. ACLU*, 521 U.S. 844 (1997) (applying strict scrutiny to statute that criminalized knowingly transmitting obscene or indecent material to minors over the internet, rejecting the application of *Ginsberg v. New York*, 390 U.S. 629 (1968) to such a case, and striking down statute because it was too broad and impeded the ability of adults to view constitutionally protected material); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000) (applying strict scrutiny to statute designed to protect children and striking down that statute because the government failed to show the statute provided the least restrictive means to advance the government's interest); *Ashcroft v. ACLU*, 542 U.S. 656 (2004) ("*Ashcroft II*") (applying strict scrutiny to statute requiring age verification via credit card or other commercially reasonable means and striking down the statute for failing to advance the state's compelling interest and for not being tailored to the least

17

restrictive means); *see also Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 289 (5th Cir. 2024) (Higginbotham, J., dissenting in part and concurring in part) (discussing how these four cases would lead to the invalidation of a law materially identical to the one passed by Indiana).

In the case most like the one here, the Supreme Court affirmed the preliminary enjoinment of the Child Online Protection Act.  *See Ashcroft II*, 542 U.S. at 660–61.  That statute imposed penalties on websites that posted content that was "harmful to minors" for "commercial purposes" unless those websites "requir[ed the] use of a credit card" or "any other reasonable measures that are feasible under available technology" to restrict the prohibited materials to adults.  47 U.S.C. § 231(a)(1).  The Supreme Court noted that such a scheme failed to clear the applicable strict scrutiny bar.  *Ashcroft II*, 542 U.S. at 665–66 (applying strict scrutiny test).  That was because the regulations were not particularly effective as it was easy for minors to get around the requirements, *id.* at 667–68, and failed to consider less restrictive alternatives that would have been equally effective such as filtering and blocking software, *id.* at 668–69 (discussing filtering and blocking software).  All of that is equally true here, which is sufficient to resolve this case against the Attorney General.

The Attorney General disagrees.  To do so, he cites the Fifth Circuit's decision in *Free Speech Coalition v. Paxton*, 95 F.4th 263 (5th Cir. 2024).  There, despite no intervening change in Supreme Court precedent, the Fifth Circuit found that the aforementioned Supreme Court precedents were not binding upon it because those opinions "contain[ed] startling omissions."  *Paxton*, 95 F.4th at 274.  Instead of applying

18

strict scrutiny as directed by the Supreme Court, the Fifth Circuit applied rational basis scrutiny under *Ginsberg v. New York*, 390 U.S. 629 (1968), even though the Supreme Court explained how *Ginsberg* was inapplicable to these types of cases in *Reno*, 521 U.S. at 865–66. The Attorney General argues this court should follow that analysis and apply rational basis scrutiny under *Ginsberg*.

However, this court is bound by *Ashcroft II*. *See Agostini v. Felton*, 521 U.S. 203, 237–38 (1997) (explaining lower courts "should follow the case which directly controls"). To be sure, *Ashcroft II* involved using credit cards, and Indiana's statute requires using a driver's license or third-party identification software.[10] But as discussed below, this is not sufficient to take the Act beyond the strictures of strict scrutiny, nor enough to materially advance Indiana's compelling interest, nor adequate to tailor the Act to the least restrictive means.

The court begins by concluding the age verification provisions place burdens on a significant amount of speech protected by the First Amendment such that the Act is significantly overbroad and rational basis is not appropriate. The court then determines

---

[10] It is not clear this is a distinction that can even be drawn from the Supreme Court's discussion of the Child Online Protection Act. That statute allowed websites to verify an adult's identity through "any other reasonable measures that are feasible under available technology." 47 U.S.C. § 231(a)(1). Driver's licenses were around in 2004 and could have been used in place of credit cards as another reasonable measure to verify someone's age in the same way they can now. Indeed, adult-ID verification was considered in *Ashcroft II* as less effective than filtering. *See* 542 U.S. at 668 (explaining the "Commission on Child Online Protection" assigned an effectiveness score "of 7.4 for server-based filters and 6.5 for client-based filters, as compared to 5.9 for independent adult-ID verification, and 5.5 for credit card verification"). The factual evidence in this record demonstrates credit cards are not effective at preventing persons under 18 from participating in adult activities like ordering tobacco, e-cigarettes, or alcohol online. (Sonnier Decl. at 57).

that strict scrutiny over intermediate scrutiny is the appropriate framework.  Finally, the

court applies strict scrutiny, ultimately determining that the age verification provisions

fail both parts of that analysis.[11]

### i.    The Act Places Burdens on Protected Speech

Beginning from first principles, the First Amendment protects the exchange of

information among the populace through direct speech and through conduct that

expresses a message.  *Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("The First

Amendment literally forbids the abridgment only of 'speech,' but we have long

recognized that its protection does not end at the spoken or written word."); *see also*

*Spence v. Washington*, 418 U.S. 405, 409 (1974) (explaining conduct maybe "sufficiently

imbued with elements of communication to fall within the scope of the First and

Fourteenth Amendment").  Regulations on speech and conduct that fall entirely outside

the First Amendment are subjected only to rational basis scrutiny.  *See, e.g.*, *Ginsberg*,

390 U.S. at 642 ("To sustain state power to exclude [speech unprotected by the First

Amendment] requires only that we be able to say that it was not irrational . . . .").

"[M]inors are entitled to a significant measure of [this] First Amendment

protection, and only in relatively narrow and well-defined circumstances may

government bar public dissemination of protected materials to them."  *Erznoznik v.*

*Jacksonville*, 422 U.S. 205, 212–13 (1975).  One of those narrow areas is the State's

---

[11] Because this analysis is presented on a motion for a preliminary injunction, these conclusions
are likewise preliminary and concern the likely outcome of the merits based on the record
presented to the court.  These conclusions may change based on the development of the record.

ability to restrict the dissemination of materials that would be obscene from the perspective of minors. *Ginsberg*, 390 U.S. at 638 (upholding regulation prohibiting the sale of sexual material that would be obscene from the perspective of a child). But even those regulations cannot impede an adult's ability to see the same material without triggering heightened scrutiny so long as the material retains some First Amendment protection. *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 74 (1983) ("[T]he government may not 'reduce the adult population . . . to reading only what is fit for children.'" (quoting *Butler v. Michigan*, 352 U.S. 380, 383 (1957))).

Where the government crafts a regulation that burdens a significant amount of speech beyond the core purpose of the statute (i.e., limiting adult's ability to view speech to protect minors' sensibilities), the statute becomes vulnerable to a facial attack because overbroad regulations "have the potential to chill, or deter, speech outside their boundaries." *Counterman v. Colorado*, 600 U.S. 66, 75 (2023). These facial overbreadth challenges allow a law to "be invalidated" if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). In other words, "[l]itigants . . . are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). This facial challenge transforms this case from one about limiting a minor's

ability to view harmful content, to a case about whether the burdens placed upon adult's access to protected speech are constitutionally acceptable. *Paxton*, 95 F.4th at 289 (Higginbotham, J., concurring in part and dissenting in part) (explaining a materially identical Texas law "limits access to materials that may be denied to minors but remain constitutionally protected speech for adults.  It follows that the law must face strict scrutiny review because it limits adults' access to protected speech using a content-based distinction.").

Regardless of whether the State regulates the speech of minors or adults though, not all speech is protected, as certain categories of speech receive lesser protection. *Brown v. Ent. Merch. Ass'n*, 564 U.S. 786, 793–95 (discussing different categories of speech that receive lesser protection); *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("[N]ot all speech is of equal First Amendment importance." (quoting *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988))).  True threats are one category and defamation another, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245–46 (2002) ("*Ashcroft I*"), but the important category for this case is obscenity, which is an unprotected area of speech, *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 54 (1973) ("This Court has consistently held that obscene material is not protected by the First Amendment as a limitation on the state police power by virtue of the Fourteenth Amendment.") (collecting cases); *Roth v. United States*, 354 U.S. 476, 484–85 (1957) ("[I]mplicit in the history of the First Amendment is the rejection of obscenity as utterly without redeeming social importance.").  Speech is obscene when: (1) an average person applying contemporary community standards would find that the speech appeals to the prurient interest when taken as a whole; (2) the speech

depicts or describes sexual conduct specifically defined by the applicable state law in a patently offensive way; and (3) the speech lacks serious literary, artistic, political, or scientific value when taken as a whole. *Miller v. California*, 413 U.S. 15, 24–25 (1973).

The age verification requirement applies to any website of which "at least one-third . . . of the images and videos published on the website depict material harmful to minors." Ind. Code § 24-4-23-1. It further defines "material harmful to minors" as material that (1) "describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse"; (2) "appeals to the prurient interest in sex of minors" when "considered as a whole"; (3) "is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors"; and (4) "lacks serious literary, artistic, political, or scientific value for minors" when "considered as a whole." Ind. Code § 35-49-2-2; *id.* at § 24-4-23-3 ("'Material harmful to minors' means matter or a performance described in IC 35-49-2-2."). Indiana has not proposed a limiting construction, and one does not appear to be available; the Act's meaning is clear.[12]

The age verification requirements do not just apply to obscene content and also burden a significant amount of protected speech for two reasons. First, Indiana's statute slips from the constitutional definition of obscenity and covers more material than considered by the *Miller* test. This issue occurs with the third prong of Indiana's "material harmful to minors" definition, where it describes the harmful material as

---

[12] No party has cited, and the court could not find, any decision by an Indiana court construing the Act.

"patently offensive" based on "what is suitable matter for . . . minors."  Ind. Code § 35-49-2-2.  It is well established that what may be acceptable for adults may still be deleterious (and subject to restriction) to minors.  *Ginsberg*, 390 U.S. at 637 (holding that minors "have a more restricted right than that assured to adults to judge and determine for themselves what sex material they may read or see"); *cf. ACLU v. Ashcroft*, 322 F.3d 240, 268 (3d Cir. 2003) (explaining the offensiveness of materials to minors changes based on their age such that "sex education materials may have 'serious value' for . . . sixteen-year-olds" but be "without 'serious value' for children aged, say, ten to thirteen"), *aff'd sub nom. in relevant part*, 542 U.S. 656 (2004).  Put differently, materials unsuitable for minors may not be obscene under the strictures of *Miller*, meaning the statute places burdens on speech that is constitutionally protected but not appropriate for children.[13]

Second, the one-third requirement triggers age verification requirements regardless of the content the viewer seeks to access.  In other words, age verification burdens must be imposed on adults attempting to access material perfectly appropriate for minors because other parts of the website may have material inappropriate for a minor.  Indeed, the Act imposes burdens on adults accessing constitutionally protected speech even when the *majority* of a website contains entirely acceptable, and constitutionally protected, material.  Thus, "[i]n order to deny minors access to potentially harmful

---

[13] For example, "scenes from the popular show 'Game of Thrones,' the 1985 film 'The Color Purple,' or the 2011 film 'the Girl with the Dragon Tattoo' all contain 'depictions' of sexual intercourse that may be 'patently offensive' to young minors . . . but still offer artistic or cinematic value for adults."  *Paxton*, 95 F.4th at 291 (Higginbotham, J., concurring in part and dissenting in part).  The same principle is true for the images and videos on websites.

24

speech," the Act burdens "a large amount of speech that adults have a constitutional right to receive and to address to another," which means it is likely unconstitutional in a substantial number of its applications. *Reno*, 521 U.S. at 874. This makes rational basis scrutiny is inappropriate. *See Brown*, 564 U.S. at 793–94 (explaining that where the government seeks to regulate speech that is constitutionally protected, like violent speech, rational basis is not appropriate); *see also Playboy*, 529 U.S. at 812 (explaining "the distinction between laws burdening and laws banning speech is but a matter of degree" and both must equally satisfy heightened scrutiny based on whether the regulation is content-based or content-neutral).

The Attorney General argues that *Ginsberg* and its application of rational basis scrutiny applies to this case. 390 U.S. 629; *see also Paxton*, 95 F.4th 263. This is incorrect for three reasons. First and most importantly, that case considered "a prohibition on the sale to minors of *sexual* material," rather than burdens on the communication of non-obscene materials from adults to other adults. *Brown*, 564 U.S. at 793–94 (emphasis in original). Second, the New York statute in *Ginsberg* only applied to commercial transactions.[14]  *Reno*, 521 U.S. at 865 ("[T]he New York statute applied only to commercial transactions . . . whereas the CDA contains no such limitation."). Third, unlike the statute in *Ginsberg*, the age verification requirements do not permit parents to

---

[14] The Attorney General contends the Plaintiff websites are involved in commercial transactions when they show obscene material. This is factually incorrect on this record: the majority of the obscene content is free; the constitutionally protected content doubly so. (Andreou Decl. ¶ 3). That a website makes money from advertising separate from its obscene content does not transform every piece of speech on the website to commercial speech, elsewise free news articles with advertisements would be subject to less First Amendment protection.

allow their children to view the material if they so desire.  *Id.* ("Under the CDA, by contrast, neither the parents' consent—nor even their participation—in the communication would avoid the application of the statute."); Ind. Code 24-4-23-10 (containing no carve out for situations where parents allow their children to see the material and requiring that websites must "prevent a minor from accessing the adult oriented website"); *cf.* Ind. Code § 35-49-3-3 (criminalizing the knowing or intentional dissemination of materials harmful to minors regardless of a parent's wishes).  Were this case an as-applied challenge where a website was defending a suit because they communicated obscene materials to a minor during a commercial transaction without the consent of the minor's parents, *Ginsberg* might be applicable.  But because this case is a facial overbreadth challenge regarding whether adults can freely communicate on websites that may elsewhere have objectionable materials, *Ginsberg* is unpersuasive.

The Attorney General's citation to the Fifth Circuit's analysis is equally unhelpful because that court did not attempt to grapple with these distinctions as the Supreme Court did.  *Cf. Paxton*, 95 F.4th at 293 (Higginbotham, J., concurring in part and dissenting in part) ("[T]he New York statute at issue in *Ginsberg* did not burden the free speech interests of adults," meaning "*Ginsberg*'s justification for rational basis review . . . has no purchase here as we are dealing with a challenge to an adult's ability to access constitutionally protected materials . . . ."); *see also Reno*, 521 U.S. at 865 ("In arguing for reversal, the Government contends that the CDA is plainly constitutional under three of our prior decisions," including *Ginsberg*, but "[a] close look at these cases, however, raises—rather than relieves—doubts concerning the constitutionality of the CDA.").

The Attorney General's argument that the Plaintiff websites are inherently obscene is likewise unpersuasive.  *See Ginzburg v. United States*, 383 U.S. 463, 465 (1966) (explaining that determining whether something is obscene may "include consideration of the setting in which the publications were presented").[15]  In his view, because the Plaintiffs' websites have obscene pornography and have names suggesting they contain obscene content, the websites themselves are obscene *in toto*.  The court rejects that argument for two reasons.  Most important, this is a facial challenge, so the specifics of Plaintiffs' websites do not matter.  *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011) ("In a facial constitutional challenge, individual application facts do not matter. Once standing is established, the plaintiff's personal situation becomes irrelevant.").

But even considering the specific content on Plaintiffs' websites, the argument fails to account for the difference between a website and the magazines at issue in *Ginzburg*.  The website is a publisher, akin to the defendant in *Ginzburg*, not an obscene material like a magazine.  The videos on the website are equivalent to the obscene magazine in *Ginzburg*.  The proposition is generally correct that 38 minutes of an obscene video is not rendered non-obscene due to 2 minutes of Shakespeare at the end, but that does not mean the website itself and all the material on the website, no matter

---

[15] It is not clear that *Ginzburg* stands for much beyond its specific facts because it was a case about commercial speech before the Court extended First Amendment protections to commercial speech.  *See Va. Bd. of Pharmacy v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748 (1976); *see also United States v. Williams* , 553 U.S. 285, 308 n.2 (2008) (Stevens, J., concurring) ("As I have explained elsewhere, *Ginzburg* has long since lost its force of law" because it "was decided before the Court extended First Amendment protection to commercial speech and cannot withstand our decision in *Virginia Bd. of Pharmacy*.").

how self-contained, is obscene.  The website itself cannot be obscene any more than defendant Ginzburg himself was obscene.  Instead, the materials (i.e, the videos and images on the website or the articles and magazines Ginzburg sold) are the focus of the analysis.

And these websites contain a substantial amount of non-obscene material.  While some of this may be indecent speech such as fully clothed but titillating modeling, other speech is more firmly rooted in the First Amendment such as podcasts and satirical videos.  (*See* Seifert Decl. ¶ 6 (explaining the website Xnxx.com contains "substantial amounts" of "clothed" and "partially clothed modeling galleries" among "nude" modeling and other "'soft core' adult content"); Muhamed Decl. ¶ 5 (explaining Paper Street Media, LLC's websites contain "images galleries featuring models . . . fully clothed" and "in the nude"); *see also* Andreou Decl. ¶ 12 (explaining Pornhub contains "a significant amount of" videos and images that is constitutionally protected speech such as "podcasts by creators in the community discussing their work and issues faced by the [adult-entertainment] community" and "comedic, non-pornographic content playing on industry tropes")).  Some speech even rises to the most storied and sturdy speech in our First Amendment firmament worthy of its highest protections: political speech.  (*See* Filing No. 30-6 at 5-6 (discussing Pornhub's blog advocating for changing age verification laws)).  Sweeping that speech up with unprotected obscenity is the exact overbreadth that plagues the Act throughout this analysis.  Ultimately, the Act places burdens on and

chills[16] an adult's ability to engage with, view, transmit, and receive a significant amount of constitutionally protected speech; rational basis is inappropriate.

### ii.    The Act Draws Strict Scrutiny

Having concluded the Act impinges on an adult's ability to transmit and receive constitutionally protect speech, the next question is the level of scrutiny demanded by the First Amendment.  Because the Act imposes burdens based on the content of speech, "the answer should be clear: The standard is strict scrutiny."  *Playboy*, 529 U.S. at 814.

Once it becomes clear a statute chills constitutionally protected speech, the First Amendment demands either intermediate or strict scrutiny depending on whether the regulation is content-neutral or content-based.  When the regulation can be "justified without reference to the content of the regulated speech," intermediate scrutiny is appropriate.  *Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (describing these regulations as those that regulate the permissible "time, place, or manner" of speech).  But because of the First Amendment's commitment to debate that is "uninhibited, robust, and wide-open," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964), those regulations that refer to the content of speech or regulate based on "the direct impact that speech has on its listeners" face strict scrutiny, *Playboy*, 529 U.S. at 812 (citing *Boos v. Barry*, 485 U.S. 312, 321 (1988) (O'Connnor, J.)).

---

[16] The record reflects that the imposition of age verification requirements will reduce traffic to impacted websites by approximately 80%.  (Filing No. 30-6 at 5).

The Act is a content-based regulation.  It imposes age verification requirements "if at least one-third . . . of the images and videos published on the website depict material harmful to minors," which is a direct reference to the content of the speech to be burdened.  Ind. Code § 24-4-23-1.  Moreover, Indiana justifies the law through reference to the speech's impact on the listener or viewer.  *See id.* at § 24-4-23-3 (defining the term "material harmful to minors"); *see also id.* at § 35-49-2-2 (same); (*see also* Filing No. 30, Def.'s Resp. Br. at 22 (explaining the government's compelling interest supporting the law is the effect of adult content on minors)).  This is "the essence of content-based regulation."  *Playboy*, 529 U.S. at 812.  The standard must be strict scrutiny.

This conclusion is in accord with how the Supreme Court treated a similar statute in *Ashcroft II*.  542 U.S. at 664–66.  Indeed, in each of the cases seeking to protect minors from indecent wire communications, the court has applied strict scrutiny.  *Sable Commc'ns*, 492 U.S. at 126–27; *Reno*, 521 U.S. at 878–79; *Playboy*, 529 U.S. at 825–26.  This has also been the conclusion of four Courts of Appeal that have addressed similar issues.  *PSINet, Inc. v. Chapman*, 362 F.3d 227, 233–34 (4th Cir. 2004); *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 101–02 (2d Cir. 2003); *ACLU v. Johnson*, 194 F.3d 1149, 1156 (10th Cir. 1999); *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008).

The Attorney General contends that intermediate scrutiny should apply because the Act is functionally an internet "zoning" regulation as it regulates the secondary effects of the speech.  This argument does not differ from one the Supreme Court has already twice rejected.  *Reno*, 521 U.S. at 867–68; *Playboy*, 529 U.S. at 815.  To sum up the Court's reasoning: "it is th[e] secondary effect" of speech "which these zoning ordinances

30

attempt to avoid, not the dissemination of 'offensive' speech." *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49 (1986) (quoting *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 71 n.34 (1976)).   The restrictions here though seek to protect the children from the "primary effects" of the speech: their uniquely damaging nature.   *Playboy*, 529 U.S. at 812 (stating when "[t]he overriding justification for the regulation is concern for the effect of the subject matter on young viewers" then the regulation is a content-based regulation).   Hence, the Supreme Court's "zoning cases . . . are irrelevant to the question here."[17]   *Id.* at 815 (discussing the inapplicability of *Renton*, 475 U.S. 41)).

Because strict scrutiny applies, the statute must materially advance a compelling government interest and be narrowly tailored to that interest such that there are no less restrictive alternatives that could equally advance the same interest.   *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (noting "strict scrutiny" requires the law to "further[] a compelling interest and [to be] narrowly tailored to achieve that interest");   *see also Reno*, 521 U.S. at 874 (explaining content-based burdens on speech are "unacceptable if less restrictive alternatives would be at least as effective in achieve the

---

[17] The Attorney General also uses banning strip clubs as an example, *see Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), but this is not a good comparator. Nude dancing only falls "within the outer ambit of the First Amendment's protection," and the government is allowed to regulate with a freer hand than when it regulates core speech.   *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000).   This law presents a different issue because it imposes identification requirements even if the only speech exchanged between user and website is that of the highest First Amendment order.   Were a private building that ordinarily functions as a strip club acting as the site of a political rally for a night, the court doubts the State could require adults to provide identification to enter.   *Cf. Nat'l Assoc. for the Advancement of Colored People v. Alabama*, 357 U.S. 449 (1958) (rejecting Alabama's attempt to require the NAACP to reveal its members' names and addresses because it "entail[ed] the likelihood of a substantial restrain upon the exercise by [the NAACP's] members of their right to freedom of association").   The same is necessarily true when it comes to Pornhub's blog advocating for legislative change.

legitimate purpose that the statute was enacted to serve").  Laws facing this most exacting level of scrutiny are *presumptively* invalid.  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid." (citing *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991))).  Thus, the government bears the burden of showing the law advances a compelling interest and there are no less restrictive means to achieve the same ends.  *Playboy*, 529 U.S. at 817 ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Ashcroft II*, 542 U.S. at 666 (explaining "the Government bears the burden of proof on the ultimate question of [an Act's] constitutionality" under strict scrutiny).

This test "really means what it says"; few laws will survive.  *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 888 (1990).  Strict scrutiny is "a demanding and rarely satisfied standard."  *S. Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (statement of Gorsuch, J.).  It is not satisfied here.

<ol type="i" start="3"><li>*The Act Is Significantly Underinclusive Regarding the Government's Compelling Interest*</li></ol>

To justify an intrusion on the sanctity of core First Amendment freedoms, the State must demonstrate that the interests driving the law are compelling and the law furthers

32

that compelling interest.[18]  *See, e.g.*, *The Florida Star v. B.J.F.*, 491 U.S. 524, 540 (1989) (explaining the statute must serve "the significant interests which appellee invokes in support of affirmance" and that underinclusiveness "raises serious doubts" that the statute serves those interests).  The most common indicator that a law fails to sufficiently advance the government's compelling interest is when the law is underinclusive.  *Brown*, 564 U.S. at 802.  Laws are underinclusive where they regulate one aspect of the problem while declining to regulate other aspects of the problem that affect the government's interest in a comparable way.  *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 451 (2015).

Take *Smith v. Daily Mail Publishing Company* as an example.  443 U.S. 97 (1979). There, the Supreme Court struck down a law purporting to protect minor criminal defendants from public exposure by prohibiting newspapers from publishing their identities.  *Id.* at 98–106.  The Court explained that statute was unconstitutional because even if it served a compelling interest, "it does not accomplish its stated purpose."  *Id.* at 105.  It was "difficult to take very seriously [the state's] asserted need to preserve the anonymity of its youthful offenders when it permits other, equally, if not more, effective means of mass communication to distribute this information without fear of punishment." *Id.* at 110.

---

[18] Were there any doubt that a law facing strict scrutiny needs to significantly advance the government's compelling interest, the lesser tier of intermediate scrutiny requires the regulation to "directly and materially advanc[e] the asserted governmental interest," which cannot be satisfied by "'mere speculation or conjecture,'" and instead requires a demonstration that the restriction "'will in fact alleviate [the harms] to a material degree.'"  *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (quoting *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999)).

So too here.  The Attorney General asserts an interest in protecting minors from the harmful effects of pornography as the interest justifying the intrusion upon adults' First Amendment rights.  To be sure, protecting minors from viewing obscene material is a compelling interest; the Act just fails to further that interest in the constitutionally required way because it is wildly underinclusive when judged against that interest.  "[A] law cannot be regarded as protecting an interest 'of the highest order' . . . when it leaves appreciable damage to that supposedly vital interest unprohibited."  *Church of Lukumi Bablu Aye, Inc. v. City of Hialeah*, 508 U.S 520, 547 (1993) (quoting *Florida Star*, 491 U.S. at 541–42 (Scalia, J., concurring in part and concurring in judgment) (citation omitted)).

The Act does little to stop minors from being able to access harmful materials because minors can easily circumvent the Act.  Even without doing anything, a minor may appear to have connected to an adult-website from another state that does not impose age verification requirements because IP address geolocation is imprecise.  (Sonnier Decl. ¶¶ 12–18).  This is particularly true when using cellphones supported by national carriers like Verizon.  (*Id.* ¶¶ 19–20).  Even beyond the inherent inaccuracy of geolocation, it is not difficult to use mechanisms like proxy servers, virtual private networks, virtual desktops, remote desktop access, or certain browsers like TOR to spoof that a user is interacting with the website from another state.  (*Id.* ¶ 21).  Some of these technologies are free, and all are relatively easy to use.  For example, free proxy servers from a website like ProxyScrape allows users to pretend to be in 129 different countries

for no charge. (*Id.* ¶ 22). Free VPNs like Proton VPN would allow a user to connect to an adult website from a multitude of other countries with just a download. (*Id.* ¶ 23).

Another option for a minor seeking to circumvent the Act is to just go to a website like Reddit, which is roughly 24% sexually explicit material and thus not required to verify its user's age. That website has entire subreddits dedicated to sexual material. (*Id.* ¶ 59 (describing the "gonewild" subreddit)). The Act does not even attempt to prevent minors from viewing or participating in these communities.[19]

To Indiana's legislature, the materials harmful to minors are not so rugged that the State believes they should be unavailable to adults, nor so mentally debilitating to a child's mind that they should be completely inaccessible to children. The Act does not function as a blanket ban of these materials, nor ban minors from accessing these materials, nor impose identification requirements on everybody displaying obscene content. Instead, it only circumscribes the conduct of websites who have a critical mass of adult material, whether they are currently displaying that content to a minor or not. Indeed, minors can freely access obscene material simply by searching that material in a

---

[19] Indiana does criminalize the dissemination of obscene materials to minors, but only if the disseminator does so "knowingly or intentionally" or "believ[ed] or intend[ed]" the recipient was under 18. Ind. Code § 35-49-3-3. This is problematic here because the age verification requirements are designed with a carve out where certain websites, such as Reddit or Facebook, can stick their head in the sand and send explicit materials to minors without ever reaching the requisite *mens rea*.

search engine and turning off the blur feature.[20]  (*Id.* ¶¶ 31–33).  Indiana's legislature is

perfectly willing "to leave this dangerous, mind-altering material in the hands of

children" so long as the children receive that content from Google,[21] Bing, any

newspaper, Facebook, Reddit, or the multitude of other websites not covered.  *Brown*,

564 U.S. at 802.

   This "is not how one addresses a serious social problem."  *Id.*  And that "raises

serious doubts about whether the government is in fact pursuing the interest it invokes,

rather than disfavoring a particular speaker or viewpoint."  *Id.*  If Indiana were truly

interested in protecting minors from seeing adult content, it would have imposed age

verification requirements wherever those images are found, not by selectively

determining which websites displaying adult content present the most danger.  In sum,

the Act does not sufficiently advance the government's interests in protecting minors from

harmful obscene speech because minors can easily circumvent the law using technology

or searching for websites not covered by the Act.  The Attorney General submits no

---

[20] The Attorney General takes pains to emphasize the images minors can freely see on a search engine are catalogued from adult oriented websites, but this is beside the point.  The Act does not ban adult oriented websites, so they are still allowed to post content.  Nor does it place any restrictions on a search engine's ability to catalogue and show this content to minors.  Regardless of whether a website like Pornhub needs to verify user's identity, search engines do not and the Act, thus, leaves copious obscene materials in the hands of minors.
[21] Google does have an age verification service separate from its search capability, but that system allows users to verify their age through submitting an ID or their credit card.  This is problematic under *Ashcroft II*, wherein the Supreme Court discussed why credit card verification was not a good substitute for a user's age.  542 U.S. at 668–69.  The same facts are undisputed here: credit card verification is not effective at ensuring a user is over the age of 18.  (*See* Sonnier Decl. at 57).

evidence to the contrary as not a single piece of evidence suggests age verification requirements succeed in prohibiting minors from viewing harmful materials.

Not only is that conclusion fatal to the Act, but it also reflects an additionally independent fatal deficiency: the Act discriminates amongst speakers in the marketplace. "Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles." *Playboy*, 529 U.S. at 812. The Court has condemned speaker-specific burdens in the strongest terms as "the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 784–85 (1978); *Citizens United*, 558 U.S. at 340 ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others."). Indeed, these types of distinctions disconnect the law from the asserted interest as the law becomes more focused on who may speak than whether the speech harms minors. *See Nat'l Inst. of Family and Life Advocs. v. Becerra*, 585 U.S. 755, 777 (2018) (explaining how the "curiously narrow subset of speakers" covered by a statute imposed requirements that were "wholly disconnected" from the State's interest).

The Attorney General has not even attempted to meet its burden to explain why this speaker discrimination is necessary to or supportive of to its compelling interest;[22] why is it that a website that contains 32% pornographic material is not as deleterious to a

---

[22] Indiana contends Plaintiffs have not challenged this point, but that is wrong. (*See* Filing No. 5, Pl.'s Br. at 7 ("By contrast, age verification at the level of adult platforms is ineffective because minors can easily circumvent it.").

minor as a website that contains 33% pornographic material?  And why does publishing news allow a website to display as many adult-images as it desires without needing to verify the user is an adult?[23]  Indeed, the Attorney General has not submitted any evidence suggesting age verification would prohibit *a single* minor from viewing harmful materials, even though he bears the burden of demonstrating the effectiveness of the statute.[24]  Ultimately, the Act favors certain speakers over others by selectively imposing the age verification burdens.  "This the State cannot do."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 580 (2011).  The Act is likely unconstitutional.

   iv. *The Act Is Not Narrowly Tailored to the Least Restrictive Means*

  The Act also fails to be narrowly tailored to the least restrictive means, which is an independent reason the law is unconstitutional.  "[A] statute is narrowly tailored only if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy."

---

[23] Other line drawing hypotheticals also present serious issues.  Consider a blog that discusses new legislation the author would like to see passed.  It contains hundreds of posts discussing these proposals.  The blog does not include images save one exception: attached to a proposal suggesting the legislature should provide better sexual health resources to adult-entertainment performers is a picture of an adult-entertainer striking a raunchy pose.  Even though 99% of the blog is core political speech, adults would be unable to access the website unless they provide identification because the age verification provisions do not trigger based on the amount of total adult content on the website, but rather based on the percentage of images (no matter how much text content there is) that contain material harmful to minors.

[24] To be clear, there is evidence suggesting websites with age verification will see a large decrease in viewership likely including some minors, but there is no evidence that those viewers (and minors) are not viewing the obscene material in other places.  The Attorney General has not shown the law stops any minor from viewing harmful materials (its sole purpose) in other, uncovered places.  If the State requires only one bar from serving alcohol to those under the age of 21, underage drinkers will go to the bar down the street that is unencumbered by the ban.  All the Act does is drive one group of speakers from a wide field of speakers, which is condemned by the First Amendment in its sharpest terms.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 580 (2011).

*Ward*, 491 U.S. at 804 (quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (internal quotation marks omitted)).  The Act "is unacceptable if less restrictive alternatives would be at least as effective in achieving the legitimate purpose that the statute was enacted to serve."  *Reno*, 521 U.S. at 874.  This means Indiana's chosen regulatory scheme needs to be "the least restrictive means among available, effective alternatives."  *Ashcroft II*, 542 U.S. at 666.

There are two possible narrower, effective alternatives to restrict minors' access to harmful materials.  First, Indiana could require a website to use age verification whenever a user attempts to access obscene content, instead of whenever a user enters a website that has obscene content.[25]  This would be immediately less restrictive because it narrows the reach of the statute to only that content which meets the harmful to minors test.  As passed, the statute would prevent an adult from viewing material acceptable for minors, unless they had and provided identification, if the website contained adult content on a different webpage.  Indiana claims this alternative is impossible but submits no evidence demonstrating this is so despite bearing the burden of proving the alternative is ineffective.  (*See* Def.'s Resp. Br. at 26 (arguing that "it is impossible for the State to regulate material harmful to minors in a more targeted way" even though it admits some

---

[25] On the record before the court, this solution would still likely be constitutionally problematic because filtering and blocking software is a better and less restrictive alternative.  Though, requiring identification only when a user seeks to view materials harmful to minors might tip the balance of the overbreadth analysis enough that a facial challenge would be inappropriate.

of the speech is constitutionally protected, because it thought it difficult to separate the obscene and non-obscene content from each other)).

Second, Indiana could make freely available and/or require the use of filtering and blocking technology on minors' devices. This is a superior alternative. (Sonnier Decl. ¶ 47 ("Internet content filtering is a superior alternative to Internet age verification."); *see also* Allen Decl. ¶¶ 38–39 (not disputing that content filtering is superior to age verification as "[t]he Plaintiff's claim makes a number of correct positive assertions about content filtering technology" but noting "[t]here is no reason why both content filtering and age verification could not be deployed either consecutively or concurrently")). That is true for the reasons discussed in the background section: filtering and blocking software is more accurate in identifying and blocking adult content, more difficult to circumvent, allows parents a place to participate in the rearing of their children, and imposes fewer costs on third-party websites.

The Attorney General submits evidence suggesting filtering and blocking applications are not perfect, but this is not enough to demonstrate the Act utilizes the least restrictive means. The inquiry is whether the less restrictive alternative is *as effective* as age verification. Filtering is certainly less restrictive as it impacts less speech (i.e., it need not affect an adult's device at all and may block obscene videos but not blog posts), and the Attorney General has not shown that age verification is more effective than filtering because he does not prove the effectiveness of age verification (particularly given its circumvention problems) nor engage in any comparative analysis.

The Supreme Court reached the same conclusion.  In *Ashcroft II*, the Supreme Court explained that the effectiveness of filtering and blocking software—which has only become more effective in the intervening 20 years—meant age verification requirements were not narrowly tailored.  542 U.S. at 667–68 (explaining a "filter can prevent minors from seeing all pornography").  Indiana's legislature chose an ineffective and more broad method to protect minors from harmful materials than other alternatives.  The First Amendment does not allow such imprecision.  On this record and in this preliminary posture, this case is not close; it appears to be a dead ringer for *Ashcroft II*, and the Plaintiffs are likely to succeed on the merits as a result.

### C.   Irreparable Harm

Because the court concluded the Act likely violates the First Amendment, Plaintiffs have established irreparable harm were they not to receive a preliminary injunction.  The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Alvarez*, 679 F.3d at 589 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion)).  Moreover, quantifying a First Amendment injury "is difficult and damages are therefore not an adequate remedy." *Flower Cab Co. v. Petite*, 685 F.2d 192, 195 (7th Cir. 1982).

### D.   Balance of the Equities and the Public Interest

When "the government is the [party opposing the injunction]," the public interest and balance of harms elements "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009) (discussing the four preliminary injunction elements in the context of a stay). "[I]njunctions protecting First Amendment freedoms are always in the public interest."

41

*Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).  By the same lights, the government has no interest in enforcing an unconstitutional law.  *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013) ("[T]he State's alleged harm is all the more ephemeral because the public has no interest in the enforcement of what is very likely an unconstitutional statute."); *see Alvarez*, 679 F.3d at 589 (explaining "the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional").  An injunction here is appropriate.

### E.    The Scope of the Injunction

The court has found that Plaintiffs' facial overbreadth challenge to the age verification requirements set forth in Indiana Code § 24-4-23, *et seq.* is likely to succeed on the merits because the Act is likely overbroad such that a substantial number of the Act's applications are impermissible in relation to its plainly legitimate sweep.  *See, e.g.*, *Broadrick*, 413 U.S. at 615.  It is quite ordinary in that context to enjoin to the entire statute statewide because in facial challenges "the claimed constitutional violation inheres in the terms of the statute, not its application."  *Ezell*, 651 F.3d at 698; *see also id.* ("[A] successful facial attack means the statute is wholly invalid and cannot be applied *to anyone*" (emphasis in original)); *Ent't Software Ass'n v. Blagojevich*, 469 F.3d 641, 646–53 (7th Cir. 2006) (affirming statewide injunction when a law seeking to suppress sexual content facially violated the First Amendment); *Sec'y of State of Md. v. Munson Co.*, 467 U.S. 947, 958 (1984) (upholding statewide universal injunction because "facial challenges to overly broad statutes are allowed not primarily for the benefit of the

litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court"); *Mulholland v. Marion Cnty. Elec. Bd.*, 746 F.3d 811, 819 (7th Cir. 2014) ("Facial unconstitutionality as to one means facial unconstitutionality as to all, regardless of the fact that the injunctive portion of the judgment directly adjudicated the dispute of only the parties before it.").

The Attorney General cites *Doe v. Rokita*, 54 F.4th 518 (7th Cir. 2022) for the proposition that an injunction must be limited to the parties rather than declaring the law void in all its applications. However, the Seventh Circuit treated that case as involving an as-applied challenge rather than a facial one. *Id.* at 520 (explaining the injunction was "needlessly broad" because it treated the statute as invalid "on its face rather than as applied"). Consequently, that case is not applicable here.

## IV.   Conclusion

For the reasons discussed above, the court determines that a preliminary injunction is appropriate. Therefore, Plaintiffs' Motion for a Preliminary Injunction (Filing No. 4) is **GRANTED**. To comport with the strictures of Federal Rule of Civil Procedure 65, the injunction shall issue by separate order. *See MillerCoors LLC v. Anheuser-Busch Cos.*, 940 F.3d 922, 922 (7th Cir. 2019) (noting Federal Rule of Civil Procedure 65 "requires a separate document setting forth the terms of . . . an injunction") (citation omitted).

Parties receiving an injunction must also provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

Accordingly, Plaintiffs are **ORDERED** to post with the Clerk of Court, no later than **July 8, 2024**, a surety bond in the amount of $10,000.  Defendant's Motion for Leave to File Supplemental Authority (Filing No. 32) is **GRANTED**.[26]

**IT IS SO ORDERED** this 28th day of June 2024.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsels of Record.

---

[26] The court has considered *Murthy v. Missouri*, 603 U.S. ___, No. 23-411 (June 26, 2024) and found it does not change any of the conclusions stated in this Entry.  A preliminary injunction would redress the Plaintiffs' injuries-in-fact for the reasons stated.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FREE SPEECH COALITION, INC., *et al.*,    )
                                          )
                  Plaintiffs,             )
                                          )
            v.                            )        No. 1:24-cv-00980-RLY-MG
                                          )
TODD ROKITA, in his official capacity as the   )
Attorney General of the State of Indiana,      )
                                          )
                  Defendant.              )

**ORDER ENJOINING DEFENDANT FROM ENFORCING SENATE BILL 17**

Today, the court found Senate Bill 17 codified at Indiana Code §§ 24-4-23, *et seq.*,

was likely facially unconstitutional under the First Amendment.  In other words, it is

likely the law is unconstitutional *in toto*.  As a result, Defendant Todd Rokita, in his

official capacity as the Attorney General of the State of Indiana, his officers, agents,

servants, employees, attorneys, and those acting in concert with them are

**PRELIMINARILY ENJOINED** from enforcing Indiana Codes §§ 24-4-23-1; 24-4-23-

2; 24-4-23-3; 24-4-23-4; 24-4-23-5; 24-4-23-6; 24-4-23-7; 24-4-23-8; 24-4-23-9; 24-4-

23-10; 24-4-23-11; 24-4-23-12; 24-4-23-13; 24-4-23-14; 24-4-23-15; 24-4-23-16; 14-4-

23-17.  This injunction shall last until the court enters final judgment in this action or an

order of this court or a higher court dissolves the injunction.

This Order takes effect on this 28th day of June 2024.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsels of Record.

# *** PUBLIC DOCKET ***

APPEAL

## U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:24-cv-00980-RLY-MG

| | |
|---|---|
| FREE SPEECH COALITION, INC. et al v. ROKITA | Date Filed: 06/10/2024 |
| Assigned to: District Judge Richard L Young | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Mario Garcia | Nature of Suit: 440 Civil Rights: Other |
| Cause: 28:1331 Federal Question: Other Civil Rights | Jurisdiction: Federal Question |

**Plaintiff**

**FREE SPEECH COALITION, INC.**              represented by   **Arian Joseph Koochesfahani**
Quinn Emanuel Urquhart & Sullivan, LLP
865 S Figueroa St 10th Floor
Los Angeles, CA 90017
213-443-3000
Email: ariankoochesfahani@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
Quinn Emanuel Urquhart & Sullivan LLP
1300 I Street, NW
Suite 900
Washington, DC 20005
202-538-8000
Email: derekshaffer@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
WEBB DANIEL FRIEDLANDER LLP
5208 Magazine St.
Suite 364
New Orleans, LA 70115
678 935-0144
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
Barnes & Thornburg LLP
11 S Meridian St
Indianapolis, IN 46204
260-494-4833
Email: kian.hudson@btlaw.com
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street
10th Floor

Los Angeles, CA 90017
213-443-3000
Fax: 213-443-3100
Email: michaelzeller@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
Quinn Emanuel Urquhart & Sullivan, LLP
111 Huntington Ave Suite 520
Boston, MA 02199
253-651-3411
Email: taylorcomerford@quinnemanuel.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AYLO PREMIUM LTD**                  represented by    **Arian Joseph Koochesfahani**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Derek Shaffer**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeff Sandman**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kian J. Hudson**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Michael T. Zeller**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Taylor Elizabeth Comerford**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**AYLO FREESITES LTD**                represented by    **Arian Joseph Koochesfahani**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Derek Shaffer**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jeff Sandman**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**WEBGROUP CZECH REPUBLIC, A.S.**      represented by    **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NKL ASSOCIATES, S.R.O.**      represented by    **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SONESTA TECHNOLOGIES, S.R.O.**      represented by  **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SONESTA MEDIA, S.R.O.**      represented by  **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**YELLOW PRODUCTION, S.R.O.**            represented by **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**PAPER STREET MEDIA, LLC**            represented by **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NEPTUNE MEDIA, LLC**              represented by    **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MEDIAME SRL**                     represented by    **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MIDUS HOLDINGS, INC.**                    represented by   **Arian Joseph Koochesfahani**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Derek Shaffer**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeff Sandman**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Kian J. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael T. Zeller**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Taylor Elizabeth Comerford**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TODD ROKITA**
*in his official capacity as the Attorney General of the State of Indiana*

represented by **James A. Barta**
Office of the Indiana Attorney General
302 West Washington Street
IGCS-5th Floor
Indianapolis, IN 46204
317-232-0709
Email: james.barta@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Jenna Lorence**
INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
480-751-8723
Email: jenna.lorence@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Katelyn E. Doering**
Office of IN Attorney General
302 West Washington Street
IGC-S Fifth Floor
Indianapolis, IN 46204
317-234-3417
Email: katelyn.doering@atg.in.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/10/2024 | 1 | COMPLAINT *(Statewide Relief Sought)* against TODD ROKITA, in his official capacity as the Attorney General of the State of Indiana, filed by All Plaintiffs. (Filing fee $405, receipt number AINSDC-8200058) (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons)(Hudson, Kian) (Entered: 06/10/2024) |
| 06/10/2024 | 2 | NOTICE of Appearance by Kian J. Hudson on behalf of Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Hudson, Kian) (Entered: 06/10/2024) |
| 06/10/2024 | 3 | Rule 7.1 Disclosure Statement by AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O. identifying Corporate Parent YELLOW PRODUCTION, S.R.O. for YELLOW PRODUCTION, S.R.O.; Corporate Parent United Communication Hldg II, a.s. for SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O.; Corporate Parent Free Speech Coalition for FREE SPEECH COALITION, INC.; Corporate Parent Aylo CY Holdings Ltd. for AYLO FREESITES LTD, AYLO PREMIUM LTD; Corporate Parent NKL Associates s.r.o. for NKL ASSOCIATES, S.R.O.; Corporate Parent MIDUS HOLDINGS, INC. for MIDUS HOLDINGS, INC.; Corporate Parent WEBGROUP CZECH REPUBLIC, A.S. for WEBGROUP CZECH REPUBLIC, A.S.; Corporate Parent MEDIAME SRL for MEDIAME SRL; Corporate Parent Paper Street Holdings, Inc. for NEPTUNE MEDIA, LLC, PAPER STREET MEDIA, LLC.. (Hudson, Kian) (Entered: 06/10/2024) |
| 06/10/2024 | 4 | MOTION for Preliminary Injunction *(Plaintiffs' Motion for Expedited Preliminary Injunction)*, filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., |

|  |  |  |
|---|---|---|
|  |  | WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Affidavit - Declaration of Alison Boden, # 2 Affidavit - Declaration of Andreas Alkiviades Andreou, # 3 Affidavit - Declaration of Robert Seifert, # 4 Affidavit - Declaration of Sadiq Muhamed, # 5 Affidavit - Declaration of Jonathan Todd, # 6 Affidavit - Declaration of Jane Doe No. 1, # 7 Affidavit - Declaration of Jane Doe No. 2, # 8 Affidavit - Declaration of Arian Koochesfahani, # 9 Affidavit - Declaration of Richard Sonnier, # 10 Affidavit - Declaration of Kian Hudson, # 11 Affidavit - Declaration of Philippe Craveir-Romao, # 12 Text of Proposed Order Establishing Briefing Schedule, # 13 Text of Proposed Order Granting Injunction)(Hudson, Kian) (Entered: 06/10/2024) |
| 06/10/2024 | 5 | BRIEF/MEMORANDUM in Support re 4 MOTION for Preliminary Injunction *(Plaintiffs' Motion for Expedited Preliminary Injunction)* , filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Hudson, Kian) (Entered: 06/10/2024) |
| 06/10/2024 | 6 | ORDER OF RECUSAL. Clerk is directed to randomly reassign case and notify parties of newly assigned Judge. Signed by Magistrate Judge Tim A. Baker on 6/10/24. (DMB) (Entered: 06/10/2024) |
| 06/10/2024 | 7 | NOTICE of Reassignment of Case to Magistrate Judge Mario Garcia. Magistrate Judge Tim A. Baker is no longer assigned to this case. Please include the new case number, **1:24-cv-980-RLY-MG**, on all future filings in this matter. (DJH) (Entered: 06/10/2024) |
| 06/10/2024 | 8 | MOTION *for Expedited Status Conference*, filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Text of Proposed Order)(Hudson, Kian) (Entered: 06/10/2024) |
| 06/11/2024 | 9 | Summons Issued as to TODD ROKITA. (AJG) (Entered: 06/11/2024) |
| 06/11/2024 | 10 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (AJG) (Entered: 06/11/2024) |
| 06/11/2024 | 11 | Notice to File Rule 7.1 Disclosure Statement. (RAGS) (AJG) (Entered: 06/11/2024) |
| 06/11/2024 | 12 | MOTION for Attorney(s) Taylor E. Comerford to Appear pro hac vice (Filing fee $100, receipt number AINSDC-8202714), filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Comerford Pro Hac Vice Certification, # 2 Text of Proposed Order Proposed Order)(Hudson, Kian) (Entered: 06/11/2024) |
| 06/11/2024 | 13 | MOTION for Attorney(s) Arian Koochesfahani to Appear pro hac vice (Filing fee $100, receipt number AINSDC-8202725), filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Koochesfahani Pro Hac Vice Certification, # 2 Text of Proposed Order Proposed Order)(Hudson, Kian) (Entered: 06/11/2024) |
| 06/11/2024 | 14 | MOTION for Attorney(s) Derek L. Shaffer to Appear pro hac vice (Filing fee $100, receipt number AINSDC-8202732), filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Shaffer Pro Hac Vice Certification, # 2 Text of Proposed Order)(Hudson, Kian) (Entered: 06/11/2024) |
| 06/11/2024 | 15 | MOTION for Attorney(s) Michael T. Zeller to Appear pro hac vice (Filing fee $100, receipt number AINSDC-8202749), filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE |

|  |  | SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Zeller Pro Hac Vice Certification, # 2 Text of Proposed Order)(Hudson, Kian) (Entered: 06/11/2024) |
|---|---|---|
| 06/12/2024 | 16 | CORRECTED SCHEDULING ORDER: This matter is set for a telephone status conference on Monday, June 17, 2024 at 11:30 a.m. (Eastern). Plaintiff's Motion for Expedited Status Conference is GRANTED. Dkt. [ 8 ]. The purpose of the conference is to discuss Plaintiff's Motion for Expedited Preliminary Injunction at Dkt [ 4 ]. The parties shall attend the conference by calling (571) 353-2301; Guest Meeting ID 768673979. Because counsel has not yet appeared for the Defendants in this action, Plaintiff's counsel is ORDERED to promptly serve this Order on the Defendants. If Plaintiff's counsel is aware of counsel who will be representing the Defendants in this action, Plaintiff's counsel is ORDERED to immediately serve a courtesy copy of this Order on counsel. Signed by Magistrate Judge Mario Garcia on 6/12/2024.(SWM) (Main Document 16 replaced on 6/12/2024) Corrected TSC to be heard Monday, June 17, 2024. (NAD). (Entered: 06/12/2024) |
| 06/12/2024 | 17 | RETURN of Personal Service, filed by All Plaintiffs. All Defendants., RETURN of Service, filed by All Plaintiffs. All Defendants. (Hudson, Kian) (Entered: 06/12/2024) |
| 06/12/2024 | 18 | AFFIDAVIT of Service for Summons, Complaint, and all initial case filings plus Court's Scheduling Order served on Defendant, Todd Rokita, in his official capacity as the Attorney General of the State of Indiana on Multiple dates, but latest is 06/12/2024, filed by All Plaintiffs. (Attachments: # 1 Affidavit of Glenn de Roziere regarding Service on Defendant)(Hudson, Kian) (Entered: 06/12/2024) |
| 06/13/2024 | 20 | NOTICE of Appearance by James A. Barta on behalf of Defendant TODD ROKITA. (Barta, James) (Entered: 06/13/2024) |
| 06/13/2024 | 21 | NOTICE of Appearance by Katelyn E. Doering on behalf of Defendant TODD ROKITA. (Doering, Katelyn) (Entered: 06/13/2024) |
| 06/13/2024 | 22 | NOTICE of Appearance by Jenna Lorence on behalf of Defendant TODD ROKITA. (Lorence, Jenna) (Entered: 06/13/2024) |
| 06/13/2024 | 23 | ORDER - granting 12 Motion to Appear pro hac vice. Attorney Taylor Comerford added as counsel on behalf of Plaintiffs. The Court FURTHER ORDERS that Taylor E. Comerford register as a user of thecourt's electronic case filing system by June 21, 2024. Failure to register could result in therevocation of his admission pro hac vice. Signed by Magistrate Judge Mario Garcia on 6/13/2024. Copy Sent Via U.S. Mail: (CKM) (Entered: 06/14/2024) |
| 06/13/2024 | 24 | ORDER - granting 13 Motion to Appear pro hac vice. Attorney Arian Koochesfahani added as counsel on behalf of Plaintiffs. The Court FURTHER ORDERS that Arian Koochesfahani register as a user of the court's electronic case filing system by June 21, 2024. Failure to register could result in the revocation of his admission pro hac vice. Signed by Magistrate Judge Mario Garcia on 6/13/2024. Copy Sent Via U.S. Mail (CKM) (Entered: 06/14/2024) |
| 06/13/2024 | 25 | ORDER - granting 14 Motion to Appear pro hac vice. Attorney Derek Shaffer as counsel on behalf of Plaintiffs. The Court FURTHER ORDERS that Derek L. Shaffer register as a user of the court's electronic case filing system by June 21, 2024. Failure to register could result in the revocation of his admission pro hac vice. Signed by Magistrate Judge Mario Garcia on 6/13/2024. Copy Sent Via U.S. Mail (CKM) (Entered: 06/14/2024) |
| 06/13/2024 | 26 | ORDER - granting 15 Motion to Appear pro hac vice. Attorney Michael T. Zeller for on behalf of plaintiffs.The Court FURTHER ORDERS that Michael T. Zeller register as a user of the court's electronic case filing system by June 21, 2024. Failure to register could result in the revocation of his admission pro hac vice. Signed by Magistrate Judge Mario Garcia on 6/13/2024. Copy Sent Via U.S. Mail (CKM) (Entered: 06/14/2024) |
| 06/19/2024 | 27 | MINUTE ORDER for proceedings held before Magistrate Judge Mario Garcia: Status Conference held on 6/17/2024. Court sets a briefing schedule on plaintiff's motion for preliminary injunction, Dkt. 4 . Defendant's brief in response to the injunctive request is due June 24, 2024. Plaintiff's reply in support of its request is due June 26, 2024. Signed by Magistrate Judge Mario Garcia. (NAD) (Entered: 06/19/2024) |

| | | |
|---|---|---|
| 06/19/2024 | 28 | NOTICE of Parties' First Extension of Time re Filing a response to pleading defined by Fed. R. Civ. P. 7(a), filed by Defendant TODD ROKITA. (Barta, James) (Entered: 06/19/2024) |
| 06/21/2024 | 29 | MOTION for Attorney(s) Jeff Sandman to Appear pro hac vice (Filing fee $100, receipt number AINSDC-8217056), filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Sandman Pro Hac Vice Certification, # 2 Text of Proposed Order)(Hudson, Kian) (Entered: 06/21/2024) |
| 06/24/2024 | 30 | RESPONSE in Opposition re 4 MOTION for Preliminary Injunction *(Plaintiffs' Motion for Expedited Preliminary Injunction)* , filed by Defendant TODD ROKITA. (Attachments: # 1 Exhibit - Brown Declaration, # 2 Exhibit - Glogoza Declaration, # 3 Exhibit - Allen Declaration, # 4 Exhibit - Barta Declaration, # 5 Exhibit - Barta Ex 1, # 6 Exhibit - Barta Ex 2, # 7 Exhibit - Barta Ex 3, # 8 Exhibit - Barta Ex 4, # 9 Exhibit - Barta Ex 5, # 10 Exhibit - Barta Ex 6, # 11 Exhibit - Barta Ex 7)(Barta, James) (Entered: 06/24/2024) |
| 06/26/2024 | 31 | REPLY in Support of Motion re 4 MOTION for Preliminary Injunction *(Plaintiffs' Motion for Expedited Preliminary Injunction)* , filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Attachments: # 1 Affidavit - Alison Boden Rebuttal Declaration, # 2 Affidavit - Kian Hudson Declaration and Exhibit 5, # 3 Affidavit - Richard Sonnier Declaration)(Hudson, Kian) (Entered: 06/26/2024) |
| 06/26/2024 | 33 | ORDER granting 29 Motion to Appear pro hac vice. Attorney Jeff Sandman for AYLO FREESITES LTD,AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., and YELLOW PRODUCTION, S.R.O. added. Copy sent to distribution list via US Mail. Signed by Magistrate Judge Mario Garcia on 6/26/2024. (Blankenberger, Jonathan) (Entered: 06/27/2024) |
| 06/27/2024 | 32 | MOTION *For Leave to File Supplemental Authority*, filed by Defendant TODD ROKITA. (Attachments: # 1 Exhibit A - Murthy v. Missouri slip op.)(Barta, James) (Entered: 06/27/2024) |
| 06/27/2024 | 34 | RESPONSE to Motion re 32 MOTION *For Leave to File Supplemental Authority* , filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Hudson, Kian) (Entered: 06/27/2024) |
| 06/28/2024 | 35 | ORDER granting 4 Motion for Preliminary Injunction. For the reasons discussed above, the court determines that a preliminary injunction is appropriate. Therefore, Plaintiffs' Motion for a Preliminary Injunction (Filing No. 4 ) is GRANTED. To comport with the strictures of Federal Rule of Civil Procedure 65, the injunction shall issue by separate order. See MillerCoors LLC v. Anheuser-Busch Cos., 940 F.3d 922, 922 (7th Cir. 2019) (noting Federal Rule of Civil Procedure 65 "requires a separate document setting forth the terms of... an injunction") (citation omitted). Parties receiving an injunction must also provide "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Accordingly, Plaintiffs are ORDERED to post with the Clerk of Court, no later than July 8, 2024, a surety bond in the amount of $10,000. Defendant's Motion for Leave to File Supplemental Authority (Filing No. 32 ) is GRANTED. Signed by District Judge Richard L Young on 6/28/2024. (TMB) (Entered: 06/28/2024) |
| 06/28/2024 | 36 | ORDER Enjoining Defendant From Enforcing Senate Bill 17. Signed by District Judge Richard L Young on 6/28/2024.(TMB) (Entered: 06/28/2024) |

| 07/03/2024 | 37 | ORDER SETTING INITIAL PRE-TRIAL CONFERENCE - Initial Pretrial Conference is set for **Thursday, 8/22/2024 at 4:00 PM (Eastern Time)** in Telephonic before Magistrate Judge Mario Garcia. The information needed to participate in this telephonic conference will be provided by a separate notification. See Order. Signed by Magistrate Judge Mario Garcia on 7/3/2024.(KAA) (Entered: 07/03/2024) |
|---|---|---|
| 07/05/2024 | 38 | NOTICE OF APPEAL as to 36 Preliminary Injunction, 35 Order on Motion for Preliminary Injunction, filed by Defendant TODD ROKITA. (Filing fee $605, receipt number AINSDC-8234431) (Barta, James) (Entered: 07/05/2024) |
| 07/05/2024 | 39 | DOCKETING STATEMENT by TODD ROKITA re 38 Notice of Appeal (Barta, James) (Entered: 07/05/2024) |
| 07/05/2024 | 40 | MOTION to Stay re 36 Preliminary Injunction , filed by Defendant TODD ROKITA. (Attachments: # 1 Text of Proposed Order)(Barta, James) (Entered: 07/05/2024) |
| 07/05/2024 | 41 | BRIEF/MEMORANDUM in Support re 40 MOTION to Stay re 36 Preliminary Injunction , filed by Defendant TODD ROKITA. (Barta, James) (Entered: 07/05/2024) |
| 07/05/2024 | 42 | MOTION *for Expedited Briefing Schedule*, filed by Defendant TODD ROKITA. (Attachments: # 1 Text of Proposed Order)(Barta, James) (Entered: 07/05/2024) |
| 07/08/2024 | 43 | RESPONSE to Motion re 42 MOTION *for Expedited Briefing Schedule* , filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Hudson, Kian) (Entered: 07/08/2024) |
| 07/08/2024 | 44 | Submission *Injunction Bond as required by ECF 35*, filed by Plaintiffs AYLO FREESITES LTD, AYLO PREMIUM LTD, FREE SPEECH COALITION, INC., MEDIAME SRL, MIDUS HOLDINGS, INC., NEPTUNE MEDIA, LLC, NKL ASSOCIATES, S.R.O., PAPER STREET MEDIA, LLC, SONESTA MEDIA, S.R.O., SONESTA TECHNOLOGIES, S.R.O., WEBGROUP CZECH REPUBLIC, A.S., YELLOW PRODUCTION, S.R.O.. (Hudson, Kian) (Entered: 07/08/2024) |
| 07/10/2024 | 45 | PARTIES' SHORT RECORD re 38 Notice of Appeal - **Instructions for Attorneys/Parties attached.** (KAA) (Entered: 07/10/2024) |

**Case #: 1:24-cv-00980-RLY-MG**