UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FREE SPEECH COALITION, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) No. 1:24-cv-00980-RLY-MG |
| TODD ROKITA, in his official capacity as the Attorney General of the State of Indiana, | ) ) ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION TO STAY PROCEEDINGS OR, IN THE ALTERNATIVE, EXTEND THE
CASE SCHEDULE**

THEODORE E. ROKITA
Attorney General of Indiana

James A. Barta
Solicitor General

Jenna M. Lorence
Deputy Solicitor General

Katelyn E. Doering
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
Indianapolis, Indiana 46204
Tel: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov

David H. Thompson
Peter A. Patterson
Brian W. Barnes
Megan M. Wold
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

*Counsel for Defendant*

## INTRODUCTION

Plaintiffs, eleven companies engaged in making or marketing pornographic material and one trade organization representing them (hereafter, the "Pornographers"), proposed the case management schedule in this matter, to which Defendant Indiana agreed and which this Court entered. The Pornographers did so while knowing that the U.S. Supreme Court would be deciding another case, *Free Speech Coalition, Inc. v. Paxton*, in which the same plaintiffs challenge a Texas age-verification law that is nearly identical to the Indiana law the Pornographers challenge here. 144 S. Ct. 2714 (2024) (mem.) The Pornographers were also previously engaged in discovery in that case, and so were aware of what discovery here was likely to entail.

Pursuant to that schedule, Indiana has issued requests for production of documents and interrogatories to the twelve plaintiffs, and has requested 30(b)(6) deponents from each plaintiff group (for a total of 6 witnesses). The Pornographers only arrive at their outlandish claims of discovery overreach ("588 total requests, atop the 115 total deposition topics," Pls.' Mot. to Stay Proceedings, Dkt. 69 at 1 (Oct. 21, 2024)), by multiplying Indiana's requests across the individual plaintiffs to whom they apply—even though Indiana has no control over the number of plaintiffs who chose to participate in this dispute and thus the scope of discovery that is relevant to the claims they have brought. In reality, Indiana has served between 10 and 19 interrogatories and between 18 and 42 requests for production of documents on each corporate group of plaintiffs.

Yet now that discovery is underway, the Pornographers cry foul and run to this Court to seek a discovery stay until the Supreme Court resolves *Paxton*. No stay is warranted here because the Pornographers cannot show, as they must, that good cause exists to stay discovery. First, the Pornographers provide no reason to think that the Supreme Court's *Paxton* decision will narrow or simplify discovery disputes in this case. The legal issues the Pornographers raise are not clearly

implicated in *Paxton*. And regardless, the parties' future discovery disputes are merely hypothetical at this stage anyway, given that the parties have met and conferred only once. Second, and for largely the same reasons, the Pornographers have offered no reason to think that a stay of discovery would avoid any litigation in this Court. Because the parties are not sufficiently far along in discovery to know the contours of their discovery disputes, if any, it is pure speculation to think that waiting for the *Paxton* decision would avoid litigation. Third, a stay will prejudice Indiana. The Pornographers' lawsuit threatens a duly enacted Indiana law that is supported by a compelling government interest in protecting Indiana minors from harmful online pornography. When the Supreme Court issues a decision in *Paxton*, the Seventh Circuit may revisit its order staying this Court's preliminary injunction decision, and Defendant's age-verification law could be rendered unenforceable at least until a merits decision is reached in this case. Defendant would then be greatly prejudiced by a stay, under which the parties would only be *resuming* discovery eight months from now when a *Paxton* decision is expected, as opposed to continuing the current case management schedule, under which motions for summary judgment will be fully briefed by the time a *Paxton* decision is released.

The Pornographers' alternative argument—to expand the parties' agreed-and-entered two-month extension of discovery deadlines to five months—is premature and unsupported. The Pornographers do not know how long it will take to litigate discovery disputes in this matter because the parties do not know what, if any, discovery disputes will arise. The parties should proceed on the current case management schedule to narrow their disputes before further delaying discovery in this case.

The Pornographers' motion to stay discovery or extend the case management deadlines should be denied.

## BACKGROUND

### A.  The Pornographers Initiate Litigation Against Indiana

On June 10, 2024, the Pornographers filed this lawsuit against Indiana, alleging a variety of constitutional claims related to S.B. 17, Indiana's law requiring online pornographers to age-verify that their viewers are adults. Compl., Dkt. 1. At the same time, the Pornographers filed a motion for a preliminary injunction limited to their constitutional claim under the First Amendment. Dkt. 4. Indiana's law was due to take effect exactly three weeks later.

On June 28, 2024, this Court granted the Pornographers' motion for a preliminary injunction. Dkt. 35.

### B.  The Pornographers Propose, And Defendant Agrees To, The Case Management Plan

On August 15, 2024, the parties filed a joint proposed case management plan with this Court. Dkt. 53. Under the joint proposal, the parties would exchange expert reports in late October 2024 and mid-November 2024; all discovery would close by December 31, 2024; and dispositive motions would be filed by January 31, 2025. The Court entered the joint proposal as the case management plan on August 23, 2024. Dkt. 62.

The Pornographers acknowledge that they proposed this case management plan, to which the State merely agreed. Dkt. 69 at 3 ("Plaintiffs had proposed this timeline—to which Indiana agreed . . . ."). The parties reached that agreement while possessing significant knowledge about the scope of this case and the issues in dispute, having already briefed the Pornographers' First Amendment claims in response to their motion for a preliminary injunction. And the parties were aware of the U.S. Supreme Court's pending consideration of *Free Speech Coalition v. Paxton*, 144 S. Ct. 2714 (2024). The U.S. Supreme Court had granted certiorari in the *Paxton* case (in which Petitioners there are Plaintiffs here) on July 2, 2024, weeks before the parties began negotiating

the discovery schedule here. The Pornographers had also already received discovery requests in the *Paxton* case earlier this year, and are engaged in substantially similar litigation in other jurisdictions, too—all of which gave them significant insight into the scope of discovery that may be relevant to this case.

Although the Pornographers now assert that their proposed discovery timeline was "based explicitly on the understanding that discovery in this First Amendment challenge should be narrow and simple," Dkt. 69 at 3, the case management plan does not bear that out. In the case management plan, both the Pornographers and Indiana stated that "this case may be appropriate for summary judgment." Dkt. 62 at 6. Indiana did not forswear the relevance of additional fact discovery, and to the contrary, stated that although "many of the issues are legal," "[t]o the extent there are factual issues, discovery may reveal there is no genuine dispute or the dispute is not material to the outcome." *Id.* The Pornographers took the position, speaking only for themselves, that only "[l]imited additional factual development is needed, primarily in the form of expert discovery," but Indiana never claimed that discovery would be limited to or focused solely on experts. *Id.* Additionally, at the time the parties proposed the case management schedule, the parties did not understand this to be a "First Amendment challenge," because the Pornographers pressed more than just First Amendment claims.[1]

### C. Indiana Propounds Reasonable Discovery Requests To The Pornographers

In keeping with this Court's case management order, Indiana began propounding discovery

---

[1] After Indiana served discovery requests, the Pornographers indicated that they no longer intended to pursue many of their non-First Amendment claims. The parties have not met and conferred about the scope of discovery since the Pornographers announced this change in position. Dkt. 72 at 2.

4

on September 9, 2024, by issuing a single set of 42 requests for production of documents to Plaintiffs Aylo Premium Ltd and Aylo Freesites Ltd, two entities who share a single director and who filed a single declaration in support of plaintiffs' preliminary injunction motion in this case. Ex. A; *see* Andreou Decl., Dkt. 4-2 at 2 (June 10, 2024) ("I hold the position of Director at Aylo Freesites Ltd," and "I hold the position of Director at Aylo Premium Ltd"). The Pornographers now count these as "84 requests," Dkt. 69 at 3, simply because the requests were issued to two parties and the Pornographers have chosen to have those entities respond individually.

On September 20, Indiana served interrogatories on all twelve plaintiffs. Indiana divided the plaintiffs into groups based on the declarations they had filed in support of their motion for a preliminary injunction.[2] As to each group, Indiana served fewer interrogatories than the Federal Rules of Civil Procedure allow: 19 interrogatories to Plaintiffs Aylo Premium Ltd and Aylo Freesites Ltd; 19 to Plaintiffs MediaME SRL and Midus Holdings, LLC; 18 to Plaintiffs Paper Street Media, LLC and Neptune Media, LLC; 18 to Plaintiffs NKL Associates, S.R.O., Webgroup Czech Republic, A.S., Sonesta Media, S.R.O., and Sonesta Technologies, S.R.O.; 16 to Plaintiff Yellow Production S.R.O.; and 10 to Plaintiff Free Speech Coalition. Ex. B. These interrogatories almost entirely overlap among the different groups of plaintiffs, and where they do not overlap, that is because Indiana intentionally served *fewer* interrogatories targeted to the specific nature of the plaintiff entity (for example, Free Speech Coalition is the only plaintiff membership organiza-

---

[2] *See* Seifert Decl., Dkt. 4-3 at 1–3 (June 10, 2024) (naming declarant Seifert as director of NKL Associates, S.R.O., Webgroup Czech Republic, A.S., Sonesta Media, S.R.O., and Sonesta Technologies, S.R.O.); Muhamed Declaration, Dkt. 4-4 at 1–2 (June 10, 2024) (naming declarant Muhamed as CEO of Paper Street Media, LLC and Neptune Media, LLC); Todd Decl., Dkt. 4-5 at 1 (June 10, 2024) (naming declarant Todd as chairman of Yellow Production, s.r.o.); Boden Decl., Dkt. 4-1 at 1 (June 10, 2024) (naming declarant Boden as Executive Director of Free Speech Coalition).

5

tion and received interrogatories tailored accordingly). In their motion, however, the Pornographers double- or even quadruple-count many of these interrogatory requests because the requests were issued to multiple parties, and the Pornographers have chosen to have all twelve plaintiff entities respond individually.

Indiana's interrogatories are relevant to the claims and defenses in this litigation and fall within the scope of discovery that the Federal Rules of Civil Procedure permit. Fed. R. Civ. P. 26(b)(1). They include interrogatories about:

- The Pornographers' experience complying with age-verification requirements, including in other jurisdictions, which is relevant to the Pornographers' claims because they have alleged that age verification is too costly and burdensome and will greatly reduce their adult viewership, *see, e.g.*, Ex. B at 15, Def's First Set of Interrogs. to Aylo Premium Ltd. and Aylo Freesites, Ltd., Interrogs. 2, 4–6, 17–19;

- The Pornographers' knowledge of their own users (for example, their age and geographic location), which is relevant to their claims about who will be affected by age verification and the feasibility of geo-fencing, *see, e.g.*, *id.* at Interrogs. 9, 11–12;

- The Pornographers' collection of their own users' data and the ways in which they secure that data, which is relevant to their claims that Indiana's age-verification law endangers their users' private information, *see, e.g.*, *id.* at Interrogs. 7–8;

- The Pornographers' knowledge of the content at their own websites, which is relevant to Indiana's contention that these websites are obscene and therefore unprotected *as a whole*, even if they include some amount of non-obscene speech, *see, e.g.*, *id.* at Interrog. 13; and

- The Pornographers' revenue, which is relevant to their arguments about the expense and burden of age-verification services and also to their damages claims, *see, e.g.*, *id.* at Interrogs. 14–15.

This is not an exhaustive description of the relevance of these topics. Indiana is nonetheless willing to meet and confer about the scope of any interrogatory.

On September 20, Indiana also served requests for production of documents on those plaintiffs who had not already received them. Indiana again grouped the Pornographers based on the

6

declarations they filed in support of their motion for a preliminary injunction. *See* n.2, *supra*. Indiana issued requests for production as follows: 32 to MediaME SRL and Midus Holdings, LLC; 32 to Paper Street Media, LLC and Neptune Media, LLC; 32 to NKL Associates, S.R.O., Webgroup Czech Republic, A.S., Sonesta Media, S.R.O., and Sonesta Technologies, S.R.O.; 20 to Yellow Production S.R.O.; and 18 to Free Speech Coalition. Ex. B. Again, the requests for production almost entirely overlap among the different groups of plaintiffs, and where they do not, it is because of the nature of the particular plaintiff entities. And again, the Pornographers double- or even quadruple-count many of these requests for production, *see* Dkt. 69 at 1 (claiming "588 total requests"), simply because Indiana issued requests to multiple plaintiffs and the Pornographers have chosen to have all twelve plaintiff entities respond individually.

Defendant's requests for production are also relevant to the claims and defenses in this litigation and fall within the scope of discovery that the Federal Rules of Civil Procedure permit. Fed. R. Civ. P. 26(b)(1). They include requests for production of documents about:

- The Pornographers' experience with age verification or assessment of the cost and feasibility of age verification, including in other jurisdictions, *see, e.g.*, Ex. A at 8, Def's First Set of Requests for Production of Documents to Aylo Premium Ltd. and Aylo Freesites Ltd., Requests 15–18, 23–25, 28, 31–32;

- The Pornographers' website content, including the ways that they advertise websites to the public, *see, e.g.*, *id.*, Requests 8, 11–13, 26, 37–38;

- The Pornographers' knowledge about their own users' age, geographic location, or other information, *see, e.g.*, *id.*, Requests 2–4, 6–7;

- The Pornographers' own data collection and data privacy policies, *see, e.g.*, *id.*, Request 33; and

- The Pornographers' knowledge of minors' use of VPNs and the dark web, *see, e.g.*, *id.*, Request 30.

These requests are relevant for at least the same reasons provided *supra* at 6, in relation to Indiana's interrogatories. Nonetheless, Indiana has been and remains willing to meet and confer about the

7

scope of these requests.

In other words, as to each of the twelve plaintiffs in this case, Indiana served between 10 and 19 interrogatories and between 18 and 42 requests for production of documents, asking each entity to provide largely the same types of information, all of which is relevant to this case.

Indiana also requested that the Pornographers identify a Rule 30(b)(6) witness for each plaintiff group, again based on the groupings reflected in the declarations the Pornographers filed in support of their motion for a preliminary injunction. Ex. C. As requested, this would be a total of 6 witnesses. Indiana set out ten topics for each requested witness from the corporate plaintiff groups, and five topics for Free Speech Coalition, the only plaintiff membership organization. *Id.* For the corporate plaintiffs, these deposition topics included basic questions about the Pornographers' businesses as they relate to age verification (for example, their consideration and assessment of the feasibility and cost of third-party age verification services), website content (for example, viewership statistics by type of content), and content filtering (for example, the Pornographers' knowledge or research related to content filtering on digital devices). *Id.* For Free Speech Coalition, Indiana listed topics related to its members on whom it intends to rely for standing and its knowledge or research related to age verification, content filtering, and the effect of age verification on adult viewership of pornography online. *Id.* The Pornographers informed Defendant that they were working on dates and designees, and since filing this stay motion, they have indicated that they will return to these requests after a stay decision is reached. *Id.* Before filing this motion, the Pornographers never objected to these Rule 30(b)(6) requests or topics, and even up to the present time, the Pornographers have never requested to meet and confer about them.

Moreover, it appears likely that the parties may yet reach agreement on many of the discovery disputes that Plaintiffs obliquely forecast. Of the specific discovery requests that Plaintiffs

8

highlight, Dkt. 69 at 5, many are requests about which the parties have not yet met and conferred or for which Defendant has already offered a narrower path forward. All of them remain open to negotiation.

### D. The Parties Have Met And Conferred Only Once

Although the Pornographers' motion suggests that the parties are at a discovery impasse, Dkt. 69 at 1 ("voluminous motion practice is imminent"), and *id.* at 5 (predicting "extensive and time-consuming motion practice"), they acknowledge that the parties have in fact met and conferred only once. The purpose of that meet and confer was limited to the responses to Defendant's First Set of Requests for Production to Aylo Premium Ltd. and Aylo Freesites Ltd, Comerford Decl., Dkt. 69-1 ¶ 7 (Oct. 21, 2024). And the parties spent much of that meet and confer discussing the Pornographers' intention to seek a stay of all discovery, which they had not previously raised with Indiana. Although the Pornographers largely refused to respond to Indiana's document requests to the Aylo Plaintiffs, Indiana has conveyed that it is willing to meet and confer to narrow or otherwise negotiate about the appropriate scope of responses to its propounded discovery, and remains willing to do so.

In response to Indiana's other discovery requests, the Pornographers have now also largely refused to provide responses, but again, Indiana remains willing to meet and confer to narrow or otherwise negotiate about the appropriate scope of responses to its propounded discovery.

Nonetheless, desiring to be cooperative in light of the Pornographers' concerns about the scope of discovery, Indiana agreed to jointly move the Court to extend the remaining deadlines in the case management order by two months, to allow the parties to meet and confer to narrow or eliminate any disputes the Pornographers believe are likely to arise. Dkt. 69-1 at 30. That agreed-upon two-month extension has now been granted. Order, Dkt. 74 (Oct. 24, 2024).

## LEGAL STANDARD

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" in discovery. Fed. R. Civ. P. 26(c)(1). Generally, "a stay of discovery is warranted only when a party raises a potentially dispositive threshold issue such as standing, jurisdiction, or qualified immunity." *Saeed & Little, LLP v. Casey*, No. 1:23-cv-01647-RLY-KMB, 2024 WL 3678203, at *2 (S.D. Ind. Aug. 5, 2024) (cleaned up).

"The party seeking a stay has no absolute right to a stay; rather, that party bears the burden of proof to show that the Court should exercise its discretion in staying the case." *United States v. Ind. Univ. Health Inc.*, No. 1:13-cv-02009-TWP-MJD, 2015 WL 3961221, at *1 (S.D. Ind. June 20, 2015) (internal citation omitted). "A court will evaluate three factors to determine if good cause for a stay exists: (1) the prejudice or tactical disadvantage to the non-moving party, (2) whether or not issues will be simplified, and (3) whether or not a stay will reduce the burden of litigation." *Saeed & Little, LLP*, 2024 WL 3678203, at *2 (quoting *Johnson v. Navient Sols., Inc.*, 150 F. Supp. 3d 1005, 1007 (S.D. Ind. 2015)).

A court may modify a discovery schedule "only for good cause." Fed. R. Civ. P. 16(b)(4). "[T]he good cause standard is met when the movant demonstrates that despite due diligence in discovery, the Court's case management deadlines cannot be met." *Fricke v. Menard, Inc.*, No. 1:21-cv-03086-JPH-MKK, 2023 WL 167462, at *1 (S.D. Ind. Jan. 12, 2023) (quoting *Stewardson v. Cass County*, No. 3:18-cv-958-DRL-MGG, 2020 WL 5249453, at *1 (N.D. Ind. Sept. 3, 2020)).

## ARGUMENT

The Pornographers have not established good cause for a stay, and their request to further extend the case management schedule is, at best, premature. Their motion should be denied.

I. **The Pornographers Have Not Established Good Cause To Stay Discovery Pending the Supreme Court's Decision in *Paxton***

The Pornographers have not established good cause to stay discovery in this matter until the U.S. Supreme Court decides *Free Speech Coalition v. Paxton*. The U.S. Supreme Court will hear argument in that case on January 15, 2025, with a decision expected in late June 2025.

*First*, the Supreme Court's *Paxton* decision is unlikely to "obviate or clarify the issues" that pertain to discovery, despite what the Pornographers claim, Dkt. 69 at 6. *See Saeed & Little, LLP*, 2024 WL 3678203, at *2 (one factor a court will consider is "whether or not [the] issues will be simplified" by a stay). In *Paxton*, the Supreme Court granted certiorari to resolve a legal question: "Whether the court of appeals erred as a matter of law in applying rational-basis review to a law burdening adults' access to protected speech, instead of strict scrutiny as this Court and other circuits have consistently done." It did not grant certiorari to resolve any discovery issues or how rational basis or strict scrutiny applies. The Pornographers' prediction that *Paxton* will obviate any need to resolve discovery disputes in this case is speculative, particularly because the parties *do not yet know* whether (and if so, what) issues will be disputed during discovery. The parties have met and conferred only once, about only a subset of the discovery requests in this matter.

Nonetheless, the Pornographers put forward two legal issues that they believe the Supreme Court's *Paxton* decision "likely will resolve." Dkt. 69 at 6. First, they claim that the Supreme Court will clarify that, on strict scrutiny review, Indiana is "constrain[ed] . . . to defending the judgments contained in the legislative record," such that "Indiana cannot seek and rely upon discovery" to establish "justifications for the law that the General Assembly never actually considered." *Id.* at 6–7. Yet the Pornographers have already filed their opening merits brief in *Paxton* and did not ask the Supreme Court to hold that state officials can only rely on "judgments contained in the legislative record." *Id.* All that the Pornographers' brief states is that "Texas has taken no such steps—

11

or even, as far as the legislative record reflects, considered such less restrictive alternatives." Ex. D, *Paxton* Pet'rs Br., at 41. That statement is not enough even to *describe* the issue the Pornographers now assert that *Paxton* will resolve, much less to ask the Supreme Court to resolve it.

In the stay motion, the Pornographers also contend that the Supreme Court's *Paxton* decision could "confirm[] that Indiana's 'obscenity' argument . . . is out-of-bounds and incapable of justifying broader discovery." Dkt. 69 at 7. But again, plaintiffs' opening brief in *Paxton* does not raise that issue. In *Paxton*, the Pornographers have argued only that Texas's law targets "sexual material that is obscene for minors but not for adults." Ex. D at 42 (emphasis omitted). They have not addressed the argument Indiana makes here: that, under *Ginzburg v. United States*, 383 U.S. 463, 465–66 (1966), the Pornographers' websites are obscene *for adults* as a whole, even if some speech they contain is otherwise protected. *See* PI Opp., Dkt. 30 at 15–16 (June 24, 2024). There is no realistic possibility that the Supreme Court will decide *that* question, which falls outside the question presented in *Paxton*.

Even if it was plausible that the Supreme Court would decide either of the issues the Pornographers raise, it would not mean that whether the Pornographers' websites are obscene as a whole is out of bounds for discovery. After all, *Paxton* is a case on review of a preliminary injunction decision and necessarily will result in only a preliminary determination of the parties' likelihood of success on the merits. A remand is highly likely, including for further factual development. For example, in *Ashcroft v. American Civil Liberties Union*, the Supreme Court "remand[ed] for trial," to "allow the parties to update and supplement the factual record." 542 U.S. 656, 672 (2004). And the Federal Rules do not limit the scope of discovery to only that which will be ultimately admissible in the case; they also allow requests that "appear[] reasonably calculated to lead to the

12

discovery of admissible evidence" because "[f]or the purpose of discovery, relevancy will be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Chavez v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002) (internal citation omitted).

Moreover, none of the Pornographers' arguments related to the *Paxton* case are *dispositive* of any claim in this case, and in general, "a stay of discovery is warranted only when a party raises a potentially dispositive threshold issue such as standing, jurisdiction, or qualified immunity." *Saeed & Little, LLP*, 2024 WL 3678203, at *2; *see Ind. Univ. Health Inc.*, 2015 WL 3961221, at *7 (denying a discovery stay where "the prospect of those motions resolving this case in its entirety is simply not high enough to justify granting a stay").

*Second*, and for largely the reasons just given, entering a stay of discovery here will not avoid any litigation in this Court. *See Saeed & Little, LLP*, 2024 WL 3678203, at *2 (courts consider "whether or not a stay will reduce the burden of litigation"). The parties have no clarity as to which, if any, discovery disputes they would require this Court to resolve, and the Pornographers have failed to identify any ways in which the Supreme Court's future decision in *Paxton* would resolve the parties' hypothetical future discovery disputes. The stay the Pornographers seek would simply mean that, eight months from now when the Supreme Court issues a decision in *Paxton*, the parties will pick up the discovery process where they left off, with none of their potential disputes narrowed and no progress made in this important case.

*Third*, a stay would greatly prejudice Indiana, the non-moving party. *See Saeed & Little, LLP*, 2024 WL 3678203, at *2 (courts consider "the prejudice or tactical disadvantage to the non-moving party"). The Pornographers' requested stay would mean waiting eight months before resuming *any* discovery in this case—at which point both parties will have to comb back through

13

months-old correspondence simply to remind themselves at what point negotiations ended. Additionally, after the Supreme Court issues its mandate in *Paxton*, the Seventh Circuit could revisit its stay of this Court's preliminary injunction. The current stay from the Seventh Circuit is premised on the fact that the Supreme Court had allowed Texas's nearly identical age-verification law to remain in effect while the *Paxton* case was pending, and "[f]unctionally identical statutes should be treated the same while the Supreme Court considers the matter." *Free Speech Coal., Inc. v. Rokita*, No. 24-2174, 2024 WL 3861733, at *1 (7th Cir. Aug. 16, 2024). If the Seventh Circuit were to lift its stay in light of *Paxton* and leave the preliminary injunction intact, then Indiana would be again subject to the injunction until this case reaches final judgment. In that situation, it would matter a great deal to Indiana if the parties were eight months further along in discovery (by which point motions for summary judgment would be fully briefed under the current case management deadlines and trial potentially only four months away), versus only *beginning* to meet and confer about outstanding discovery requests.

Even if the Seventh Circuit maintains its stay of the preliminary injunction in light of *Paxton*, Indiana will still be prejudiced by the eight-month stay of discovery that the Pornographers request. Their lawsuit threatens the enforcement of a duly enacted state law supported by a compelling state interest in protecting minor children from harmful pornographic content online. Indiana is interested in maintaining diligent progress toward final judgment in this matter to ensure the continued enforcement of its age-verification law and the protection of Indiana minors. This Court, too, has "an important and inherent authority and obligation to control [its] calendars and ensure that litigation proceeds expeditiously." *Ind. Univ. Health Inc.*, 2015 WL 3961221, at *6.

The Pornographers have failed to demonstrate good cause to stay discovery until the Supreme Court decides the *Paxton* case. Indeed, the Pornographers themselves *proposed the case*

*management schedule* while aware that the Supreme Court had granted certiorari review in *Paxton*. The Pornographers' stay request should be denied.

## II.  The Requested Five-Month Extension Is Premature

Despite bearing the burden to show "good cause" to modify the discovery schedule by "demonstrat[ing] that despite due diligence in discovery, the Court's case management deadlines cannot be met," *Fricke*, 2023 WL 167462, at *1, the Pornographers provide only two sentences of argument to justify the five-month extension they request. Dkt. 69 at 8. That is clearly insufficient to carry their burden, especially where the Pornographers cannot show "due diligence" in discovery following a *single* meet and confer. Indeed, Plaintiffs' insistence that "voluminous motion practice is imminent," Dkt. 69 at 1—after only one meet and confer—is inconsistent with demonstrating "due diligence" in discovery and even suggests the Pornographers may not *intend* to strive diligently for agreement in discovery. Their requested five-month extension is, at best, premature (and at worst, entirely unwarranted).

Besides, Indiana has already agreed to a two-month extension, which the Court has entered, thus allowing the parties time to meet and confer to determine *if* they will need to litigate discovery disputes. At this time, the Court should allow that ordinary discovery process to play out, without prejudice to one or both parties seeking a further extension in the future, when any disputes between the parties have become clear and the time it will take to litigate disputes (if any) can be better predicted. In the meantime, the now-extended discovery deadlines will encourage the parties to negotiate efficiently. Even if disputes arise, there is good reason to believe many discovery-related issues can be resolved through negotiation. For example, in Indiana's requests for production, Indiana defined the "Relevant Websites" owned by each plaintiff, to which the Pornographers objected "on the grounds that [Defendant] purports to require Plaintiff to provide information as

15

to entities other than itself." Ex. E at Obj. 8. Yet when Indiana issued an interrogatory asking the same plaintiff to "[s]tate the web addresses of all websites Plaintiffs own or operate," plaintiff responded that it "will not respond to this Interrogatory," leaving Indiana unable to know what websites that plaintiff is responsible for. Ex. F at 5. This is surely a circular problem that the parties can agree to resolve if negotiations are allowed to continue.

## CONCLUSION

The Court should deny the motion to stay proceedings and deny the Pornographers' premature request to further extend the case schedule.

November 4, 2024                              Respectfully submitted,

                                              Theodore E. Rokita
                                              Indiana Attorney General

                                         By:  /s/ James A. Barta
                                              James A. Barta
                                              Solicitor General

                                              Jenna M. Lorence
                                              Deputy Solicitor General

                                              Katelyn E. Doering
                                              Deputy Attorney General

                                              Office of the Indiana Attorney General
                                              IGC-South, Fifth Floor
                                              302 West Washington Street
                                              Indianapolis, Indiana 46204-2770
                                              Telephone: (317) 232-0709
                                              Fax: (317) 232-7979
                                              Email: James.Barta@atg.in.gov

16

                David H. Thompson
                Peter A. Patterson
                Brian W. Barnes
                Megan M. Wold
                COOPER & KIRK, PLLC
                1523 New Hampshire Ave., N.W.
                Washington, D.C. 20036
                Tel: (202) 220-9600
                Fax: (202) 220-9601

                *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Kian J. Hudson
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204
Phone: (260) 494-4833
kian.hudson@btlaw.com

Arian Joseph Koochesfahani*
Michael T. Zeller*
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Phone: (213) 443-3000
Fax: (213) 443-3100
michaelzeller@quinnemanuel.com ariankoochesfahani@quinnemanuel.com

Derek Shaffer*
Quinn Emanuel Urquhart & Sullivan LLP
1300 I Street NW, Suite 900
Washington, DC 20005
Phone: (202) 538-8000
derekshaffer@quinnemanuel.com

Jeff Sandman*
Webb Daniel Friedlander LLP
5208 Magazine Street, Suite 364
New Orleans, LA 70115
Phone: (678) 935-0144
jeff.sandman@webbdaniel.law

Taylor Elizabeth Comerford*
Quinn Emanuel Urquhart & Sullivan, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Phone: (253) 651-3411
taylorcomerford@quinnemanuel.com

* admitted *pro hac vice*

                                                       */s/ James A. Barta*
                                                       James A. Barta