IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WEBGROUP CZECH REPUBLIC, A.S.; NKL ASSOCIATES, S.R.O., <br><br>*Plaintiffs / Counter-Defendants*, <br><br>v. <br><br>TODD ROKITA, in his official capacity as Attorney General of the State of Indiana, <br><br>*Defendant / Counter-Plaintiff*. | Case No. 1:24-cv-00980-RLY-MG |

**PLAINTIFFS/COUNTER-DEFENDANTS' BRIEF IN SUPPORT OF THEIR
RULE 12(B)(6) MOTION TO DISMISS**

Plaintiffs/Counter-Defendants WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. (collectively "Counter-Defendants") file this Brief in Support of Their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Defendant/Counter-Plaintiff Todd Rokita, in his official capacity as the Attorney General of the State of Indiana, has filed counterclaims seeking to enforce an Indiana law requiring website operators to halt all operations, cull and eliminate "publishe[d] [third-party] material harmful to minors" from their websites, or implement an age-verification system that requires all visitors to disclose personal information to verify they are at least eighteen years old. The age-verification requirement applies when "at least one-third of the images and videos published" on an operator's website depict adult content.

The State's counterclaims are fundamentally flawed. To start, they do not state a violation of the Act because they do not sufficiently allege that Counter-Defendants have published material on their websites that is "one-third" or more adult content (a threshold that the Act fails to define).

But even if they did, the State's counterclaims fail as a matter of law because they are preempted by Section 230 of the Communications Decency Act (47 U.S.C. § 230) as they seek to hold Counter-Defendants liable for engaging in quintessential publishing activities that courts across the country (including the Seventh Circuit) have recognized are protected. The State's counterclaims should be dismissed pursuant to Rule 12(b)(6).

## BACKGROUND

On March 13, 2023, the Indiana governor signed into law Senate Bill 17 (the "Act"). The Act first prohibits "an adult oriented website operator" from "knowingly or intentionally publish[ing] an *adult oriented website* unless the adult oriented website uses a reasonable age-verification method to prevent a minor from accessing the adult oriented website." Dkt. 114, Countercl. ("CC"), ¶ 16 (citing Ind. Code § 24-4-23-10 (emphasis added)). The Act then defines "adult oriented website" as "a publicly accessible website that publishes *material harmful to minors* if at least one-third (1/3) of the images and videos published on the website depict material harmful to minors." CC, ¶ 18 (citing Ind. Code § 24-4-23-1 (emphasis added)). The Act in turns defines "material harmful to minors" as "a matter or performance" that:

(1) describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sadomasochistic abuse;

(2) considered as a whole, appeals to the prurient interest in sex of minors;

(3) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(4) considered as a whole, lacks serious literary, artistic, political, or scientific value for minors.

CC, ¶ 19 (citing Ind. Code § 24-4-23-3).

At bottom, the Act requires certain website operators to (1) actively monitor all content on their sites to ensure that less than one-third of the "images and videos published" depict what the

State deems "material harmful to minors," or (2) require age verification before publishing third-party content. CC, ¶¶ 16-21. The Act omits any explanation of how a website operator should calculate the proportion of purportedly harmful material on its website to determine whether it is subject to the Act's age-verification requirement. *See id.* Yet a failure to comply with the Act exposes a website operator to stiff penalties, including monetary sanctions and injunctive relief for "publishing" covered content. CC, ¶ 21.

Counter-Defendants have challenged the Act on constitutional grounds since its inception. Dkt. 1. The Court initially enjoined the Act on First Amendment grounds. Dkt. 35. But the Seventh Circuit vacated that order and remanded the case with "instructions to enter judgment for [the State] with respect to the claim under the First Amendment" in light of the Supreme Court's decision in *Free Speech Coalition v. Paxton*, 606 U.S. 461 (2025). There, the Supreme Court reversed a preliminary injunction prohibiting the enforcement of Texas's age-verification statute, holding that the statute likely survived First Amendment scrutiny. Dkt. 86. Since then, Counter-Defendants have maintained their claim that the Act is preempted and barred by 47 U.S.C. § 230 ("Section 230"), a claim that was not before the Supreme Court in *Free Speech Coalition v. Paxton*. Dkt. 105.

On December 10, 2025, the State amended its answer and added two counterclaims seeking to enforce the Act (specifically Indiana Code § 24-4-23-10) against NKL (Count 1) and WebGroup (Count 2) (collectively, the "Counterclaims"). CC, ¶¶ 50-63. The State's Counterclaims fail to allege facts sufficient to state a violation of the Act, and they are barred by Section 230 in any event. *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under state or local law that is inconsistent with this subsection."). Counter-Defendants therefore move to dismiss the Counterclaims with prejudice pursuant to Rule 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). A plaintiff must allege facts that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

**I.     The State Fails to Allege a Plausible Violation of the Act.**

As noted, the Act's age-verification requirement applies only if at least one-third (1/3) of the images and videos published on the website depict material harmful to minors" (the "One-Third Rule"). *See* CC, ¶ 5 (citing Ind. Code § 24-4-23-1). This One-Third Rule is impermissibly vague, and that is a problem for the State because its Counterclaims' brief allegations concerning Counter-Defendants do not allege facts sufficient to show that Counter-Defendants triggered the One-Third Rule and were thus "adult oriented website" operators within the definition of the statute.

For starters, the Act fails to specify how compliance with its one-third threshold should be determined. To avoid due process problems, a "statute must 'provide "fair warning" as to what conduct will subject a person to liability' and 'contain an explicit and ascertainable standard[.]'" *Miner v. Gov't Payment Serv., Inc.*, 2015 WL 3463540, at *8 (N.D. Ill. May 29, 2015) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Yet the Act does not specify whether the "one-third (1/3) of the images and videos published on the website" refers to the number of discrete

"images and videos," the file size of such images and videos, or some other metric. *See* CC, ¶ 5 (citing Ind. Code § 24-4-23-1).

Consider, for example, a website that publishes eight five-minute clips of everyday television shows (*i.e.*, forty minutes of content) but one two-hour video of material the State thinks is "material harmful to minors." That website might comply with the One-Third Rule since the adult content is contained in only one of nine videos. But it might run afoul, since the run-time of the adult content is more than one-third of the total run time of all the videos. That ambiguity necessarily fails to "provide the kind of notice that will enable ordinary people to understand what conduct [the Act] prohibits."[1] *Leapers, Inc. v. Trarms, Inc.*, 203 F. Supp.3d 969, 977 (S.D. Ind. 2016) (quoting *City of Chi. v. Morales*, 527 U.S. 41, 56 (1999)). The State cannot plead a plausible violation of the Act if it does not provide the means to determine whether it applies to any given party.[2]

In any event, the State fails to plead that Counter-Defendants publish more than one-third adult content on their websites under any metric. At best, the State's allegations that specifically address Counter-Defendants merely recite verbatim the elements of the One-Third Rule. *Compare* Ind. Code §§ 24-4-23-10, 24-4-23-1 (the Act applies to a "publicly accessible website that publishes material harmful to minors, if at least one-third (1/3) of the images and videos published on the website depict material harmful to minors"), *with* CC, ¶¶ 54, 60 ("At least one third (1/3)

---

[1] Other states have enacted instructions on how to "calculate the proportion of material" for purposes of compliance with similar statutes. *See* Fla. Admin. Code § 2-44.001(2) (defining "proportion of material"). There is no similar instruction in the Act.

[2] These problems relating to the ambiguity of the Act are not unique to the Counter-Defendants; the law also impacts other popular sites that publish third-party content where some of that content may consist of what Indiana deems "sexual material harmful to minors."

of the images and videos published on [Counter-Defendants'] website[s] depict[] material harmful to minors"). That is insufficient: "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012).

The State then falls back on cherry-picked snippets from the Supreme Court oral argument in *Free Speech Coalition v. Paxton*, No. 23-1122 (2025), which the State claims equate to "a concession that at least one-third … of the images and videos published on [Counter-Defendants'] websites depict … material that is harmful to minors." CC, ¶ 27. That too is insufficient for three reasons.

***First***, the State mischaracterizes the transcript. Counsel there was responding to a question asking, "What percentage of your clients' materials would be considered obscene?" Trans. of Oral Arg., at 20, *Free Speech Coalition v. Paxton*, No. 23-1122, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-1122_22p3.pdf. But the State's allegations ignore the actual answer to that question: "I cannot quantify it"—which is far from a "concession." *Id.*

***Second***, that lawyer was also representing at least ten other clients during that argument who are no longer parties in this case, including other website operators that publish adult content under different publication policies. *See* Pet. for Writ of Certiorari, at ii, *Free Speech Coalition v. Paxton*, No. 23-1122.[3]

---

[3] "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider "documents … if they are referred to in the plaintiff's complaint." *Brownmark Fils, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). The Court may also "consider[] public court documents in deciding [a] motion to dismiss[.]" *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

***Third***, that oral argument took place nearly a year before the State asserted its Counterclaims.  The State has failed to establish that a statement made last year in the context of a Texas litigation reflects the state of play in Indiana today.  *See Leo v. Laidlaw, Inc.*, 38 F. Supp. 2d 675, 678-79 (N.D. Ill. 1999) (dismissing claims because the complaint "fail[ed] to allege that the [plaintiff] was either a participant or a beneficiary at the time the suit was filed").

The State's selective quotation—from a different argument in a different case involving different parties and a different state's statutory standard—does not provide a plausible basis to support a violation of the Act in this case.  *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (recognizing that Rule 12(b)(6) requires dismissal if allegations do not "state a claim to relief that is plausible on its face").  Nowhere else in the State's pleading does it even purport to allege facts showing the applicability of the Act.  At most, the State alleges that, six months ago, its "investigator accessed [the Counter-Defendants' websites]" and "observed at least 50 pornographic video previews with hyperlinks of pornographic videos."  CC, ¶¶ 33, 43.  But the State does not plead whether those alleged videos amounted to more than one-third of the content on Counter-Defendants' websites (and how).  *See id.* at ¶ 5 (citing Ind. Code § 24-4-23-1).  The State's Counterclaims should be dismissed for that reason alone.

**II.     Section 230 Bars the State's Counterclaims.**

Section 230 is premised on, among other things, Congress's finding that "[t]he Internet and other interactive computer services have flourished, to the benefit of all Americans, with a minimum of government regulation."  47 U.S.C. § 230(a)(4).  The statute declares that "[i]t is the policy of the United States … to promote the continued development of the Internet and other interactive computer services and other interactive media[.]"  *Id.* § 230(b)(1).  In line with its policy of fostering the proliferation of ideas and content on the internet, Section 230 "precludes

courts from entertaining claims that would place a computer service provider in a publisher's role" and hold such computer service providers (including websites) liable as publishers of third-party content. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *see also Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.").

Thus, under Section 230(c)(1), "[n]o provider of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute precludes liability—including liability from conflicting state laws—when "(1) the defendant is the 'provider or user of an interactive computer service,' and (2) the defendant is being 'treated as the publisher or speaker' of (3) 'information provided by another information content provider.'" *G.C. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023) (quoting 47 U.S.C. § 230(c)(1)); *see also* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under state or local law that is inconsistent with this subsection."). "Courts consistently have held that § 230(c)(1) offers broad immunity[.]" *Collins v. Purdue Univ.*, 703 F. Supp. 2d 862, 877 (N.D. Ind. 2010); *Associated Bank-Corp. v. Earthlink, Inc.*, 2005 WL 2240952, at *3 (W.D. Wis. Sept. 13, 2005) (recognizing that "[c]ourts have treated § 230 immunity as 'quite robust'"); *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 690 n.7 (N.D. Ill. 2006) (collecting cases recognizing same).

Where Section 230(c)(1) applies, the plaintiff's claims must be dismissed. *See Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008) (affirming dismissal on Section 230 grounds); *Force v. Facebook*, 934 F.3d 53, 63 n.15 (2d

8

Cir. 2019) (holding that the "application of Section 230(c)(1) is appropriate at the pleading stage when the statute's barrier to suit is evident from the face of plaintiff's proposed complaint") (cleaned up); *Marshall's Locksmith Serv. Inc. v. Google LLC*, 925 F.3d 1263, 1267-68 (D.C. Cir. 2019 (affirmance of motion to dismiss based on Section 230 (c)(1) immunity).

The State's Counterclaims—which fault Counter-Defendants for publishing on their websites third-party content that is allegedly harmful to minors—satisfy each prong of Section 230 and are therefore barred as a matter of law.

### A. Counter-Defendants are providers of an interactive computer service.

Courts have repeatedly recognized that operating a website qualifies as "providing an interactive computer service" under the first Section 230 prong. *See Collins*, 703 F. Supp. 2d at 878 (collecting cases "holding that websites are under the umbrella of protection of § 230(c)(1)"); *see also Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 n.6 (9th Cir. 2008) ("The most common interactive computer services are websites."). Additionally, the State's Counterclaims allege that Counter-Defendants "operate[] … publicly accessible website[s]," so there can be no question that prong one is satisfied. CC, ¶¶ 30, 40. Indeed, other courts have already determined that WebGroup and NKL satisfy the first prong. *See, e.g., Doe v. WebGroup Czech Rep.*, 767 F. Supp. 3d 1009, 1016 (C.D. Cal. 2025).

### B. The State's Counterclaims seek to treat Counter-Defendants as "publishers."

Section 230 precludes liability "where the success of the underlying claims requires the defendant to be considered a publisher" of third-party content. *Webber v. Armslist LLC*, 70 F.4th 945, 957 (7th Cir. 2023); *see also Collins*, 703 F. Supp. at 879 (recognizing that website providers "cannot be held liable for the publication of … postings by third parties"). Thus, "if the

9

means to avoid liability requires the defendant to act as the publisher," the second Section 230 prong is met. *Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 642 (9th Cir. 2025); *see also A.B. v. Salesforce, Inc.,* 123 F. 4th 788, 793 (5th Cir. 2024) (stating that "the proper standard is whether the duty the defendant allegedly violated derives from their status as a publisher or speaker *or requires the exercise of functions traditionally associated with publication*") (emphasis added).

The Seventh Circuit has not elaborated on what it means to be a publisher, but other circuits have recognized that Section 230's "key word—publisher" is "defined broadly." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024). "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009); *see also Zeran*, 129 F. 3d at 330 (Section 230(c)(1) precludes "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content."). Dictionary definitions confirm that description. *See, e.g.*, *Publish*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To distribute copies (of a work) to the public."); *Publish*, Merriam-webster.com, https://www.merriam-webster.com/dictionary/publish ("To disseminate to the public" or "issue the work of (an author)"). At bottom, "[a]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under Section 230." *Roommates.com*, 521 F.3d at 1170-71. The State's allegations easily meet this prong.

As discussed *supra* Part I, the Act applies only to "adult oriented websites," which are defined as websites that do not comply with the One-Third Rule (*i.e.*, those that fail to prevent one-third or more of "the images and videos *published* on the website" from "depict[ing] material harmful to minors"). CC, ¶ 5 (citing Ind. Code § 24-4-23-1 (emphasis added)). For websites that

10

violate the One-Third Rule—and only those websites—the Act requires that they cease operations "unless the adult oriented website operator uses a reasonable age-verification method to prevent a minor from accessing the adult oriented website." CC, ¶ 5 (citing Ind. Code 24-4-23-10). Read together, these provisions require Counter-Defendants to continuously monitor content to ensure compliance with the One-Third Rule—that is, to ensure that the content they "publish" falls below the one-third threshold—or be subject to liability based on the type of third-party content Counter-Defendants publish. *See* CC, ¶ 18, 53-54, 60-61 (seeking to impose liability for alleged non-compliance with the One-Third Rule and allegedly failing to implement age verification). Either way, the State's Counterclaims require Counter-Defendants to "be considered a publisher." *Webber*, 70 F.4th at 957; *Twitter, Inc.*, 148 F.4th at 643.

***First***, compliance with the One-Third Rule necessarily requires Counter-Defendants to engage in publishing activity. As explained *supra* Part I, compliance is already a near-impossible task because the Act does not specify how the volume of content should be measured to ensure a website stays below the threshold. But regardless, there is no way to comply with the One-Third Rule—which on its face applies to websites that "*publish*[] material"—without monitoring (and removing) third-party content to ensure that the percentage of content that depicts material harmful to minors does not exceed one-third of the "images and videos *published* on" Counter Defendants' websites. CC, ¶ 5 (citing Ind. Code § 24-4-23-1 (emphasis added)). And the State does not (and cannot) plead otherwise. The One-Third Rule requires Counter-Defendants to (1) review all third-party content posted by others, (2) evaluate whether the addition of such content would put the website above the one-third threshold, and (3) if adding such content would lead the website to violate the One-Third Rule, either reject the content, remove existing adult content to make room

11

for the new content, or add other content not "harmful to minors" to stay below the one-third threshold. *See* Ind. Code § 24-4-23-1.

The Act therefore requires website operators hosting third-party content to undertake significant additional measures to review and curate content to remain compliant with the law. And "[a] claim that obliges the defendant to monitor third-party content to avoid liability … treats the defendant as a publisher." *Twitter, Inc.*, 148 F.4th at 640. Counter-Defendants' decisions "whether to publish or to withdraw from publication third-party content" are also quintessential publishing activities—activities that the State seeks to hold Counter-Defendants liable for here through its enforcement of the Act. *Barnes*, 570 F.3d at 1102; *see also Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003) (holding that plaintiff's claims that defendant failed to filter out objectionable content were precluded under Section 230 because he was "attempt[ing] to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role"); *Zeran,* 129 F.3d at 331 (explaining that Section 230 protections are necessary in part because "[i]t would be impossible for service providers to screen each of their millions of postings for possible problems").

***Second***, even ignoring the One-Third Rule, the State's theory of liability based on the age-verification requirement—which on its face regulates the "*publish*[ing] [of] an adult oriented website"—necessarily seeks to hold Counter-Defendants liable as publishers of third-party content. CC, ¶ 16 (citing Ind. Code § 24-4-23-2 (emphasis added)). In particular, the State seeks to impose liability for the aggregation of third-party content on Counter-Defendants' websites, which is clearly a publishing activity, regardless of whether the third-party content is adult-oriented. *Id.* at ¶ 4 ("Despite these known harms to minors, [the Counter-Defendants'] websites are pumping enormous amounts of pornographic content onto the internet[.]"). Indeed, the stated

12

purpose of the age-verification requirement is to protect minors from third-party content posted on Counter-Defendants' websites by third parties. *Id.* at ¶ 5 ("In light of the extreme harms online pornography inflicts on minors, the Indiana General Assembly enacted [the Act]."). In fact, that's the only reason the State asserts its Counterclaims. *Id.* at ¶ 7 ("To protect minors … from the harms visited on them by [Counter-Defendants'] obscene content … the Attorney General brings these counterclaims[.]").

By seeking to "impos[e] liability on [Counter-Defendants] for the … information provided by a third-party content provider," the State "treat[s] [Counter-Defendants] as the publisher, a result § 230 specifically proscribes." *Associated Bank-Corp.*, 2005 WL 2240952, at *4. Such claims are prohibited by Section 230 because "Congress provided broad immunity under the CDA to Web-based service providers for all claims stemming from their publication of information created by third parties." *Doe v. Myspace*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Malibu Media, LLC v. Doe*, 2014 WL 1031336, at *4 (N.D. Ind. Mar. 17, 2014) ("Congress intended to prevent ISP's from being … held liable for publishing or distributing obscene … material written or prepared by others."); *see also Free Speech Coalition, Inc. v. Paxton*, 95 F.4th 263, 306-07 (5th Cir. 2024) (Higginbotham, J., dissenting) ("The CDA immunizes platforms from *all* liability associated with hosting third-party content and it preempts statutes inconsistent with this mandate," including Texas's H.B. 1181, which imposes "age verification requirements based on the presence of third-party content"). Accordingly, prong two is satisfied on two independent grounds.

    C.    **Counter-Defendants did not create or develop the content on which the State bases its Counterclaims.**

Regarding prong three, Section 230 bars claims that are based on the publication of "information provided by another information content provider," which is defined as "any person

13

or entity that is responsible … for the creation or development" of the offending content. 47 U.S.C. § 230(f)(3); *Collins*, 703 F. Supp. 2d at 879 (recognizing that a defendant "can be held liable for [content] in its own material published on its website … but cannot be held liable for the publication of … postings by third parties"). The offending content here is the alleged "material harmful to minors." CC, ¶¶ 53, 60. And there is not a single sentence in the State's Counterclaims alleging that Counter-Defendants "create[d] or develop[ed]" any of that material. *See generally id.* The State therefore "fail[s] to plead facts sufficient to show [Counter-Defendants are] information content provider[s] and not covered by CDA immunity." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 258 (4th Cir. 2009); *see also Backpage.com, LLC v. Dart*, 807 F.3d 229, 233-34 (7th Cir. 2015) (expressing doubt that an online forum could be held liable as an "intermediary between the [third-party creators of advertisements] and visitors to [the defendants'] webpage"). Prong three is satisfied as well.

## III.  Further Amendment is Futile.

The deadline for moving for leave to amend pleadings has long passed. *See* Dkt. 92 ("All motions for leave to amend the pleadings … shall be filed by September 10, 2025."). And because the State's Counterclaims are deficient as a matter of law, any request to amend the Counterclaims should be denied as futile. *See DeSalle v. Wright*, 969 F.2d 273, 278 (7th Cir. 1992) ("A district court does not abuse its discretion when it denies leave to amend where repleading would be futile.").

## **CONCLUSION**

For the foregoing reasons, Counter-Defendants WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. respectfully request that the Court grant their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss the State's Counterclaims.

14

Date: January 28, 2026                    Respectfully submitted,

**WHITE & CASE LLP**

By: */s/ Sean Gorman*

Sean Gorman (*pro hac vice*)
Jacqueline Chung (*pro hac vice*)
WHITE & CASE LLP
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
sean.gorman@whitecase.com
jacqueline.chung@whitecase.com

Kian Hudson (Bar No. 32829-02)
BARNES & THORNBURG LLP
11 S Meridian St
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Fax: (317) 231-7433
kian.hudson@btlaw.com

**ATTORNEYS FOR PLAINTIFFS WEBGROUP CZECH REPUBLIC, A.S.; NKL ASSOCIATES S.R.O**

## CERTIFICATE OF SERVICE

  I certify that a true and correct copy of this Statement in Response was served on all parties of record by electronic means through the CM/ECF system.

               /s/ *Sean Gorman*
               Sean Gorman