UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

WEBGROUP CZECH REPUBLIC, A.S., and )
NKL ASSOCIATES, S.R.O., )
                                                )
                      Plaintiffs, )
                                                )
                      v. )              No. 1:24-cv-00980-RLY-MG
                                                )
TODD ROKITA, in his official capacity as the )
Attorney General of the State of Indiana, )
                                                )
                      Defendant. )
                                                )
                                                )
TODD ROKITA, in his official capacity as the )
Attorney General of the State of Indiana, )
                                                )
                    Counter Claimant, )
                                              )
                      v. )
                                                )
NKL ASSOCIATES, S.R.O., and )
WEBGROUP CZECH REPUBLIC, A.S., )
                                                )
                    Counter Defendants. )

**ENTRY DENYING COUNTER-DEFENDANTS' MOTION TO DISMISS**

Indiana passed a law that requires adult oriented websites to implement reasonable age verification measures if at least one-third of the images or videos published on the website depict material harmful to minors. Ind. Code §§ 24-4-23-1, -10. NKL Associates, S.R.O., ("NKL") and WebGroup Czech Republic, A.S. ("WebGroup") (collectively "Counter-Defendants") sued Todd Rokita in his official capacity as the Attorney General of Indiana, arguing, among other things, that the law is preempted by the Communications Decency Act. In response, the Attorney General filed counterclaims

1

against NKL and WebGroup alleging they violated Indiana's age verification law. Before the court is Counter-Defendants' motion to dismiss the Attorney General's counterclaims. (Dkt. 120). For the reasons addressed below, the court **DENIES** Counter Defendants' motion to dismiss.

## I.    Background

The facts of this case are recited in full at Docket 35, so the court includes only the facts applicable to this motion.

Indiana passed an age verification law that requires adult oriented websites to implement reasonable age verification methods to prevent minors from accessing the material. Ind. Code § 24-4-23-10. An "[a]dult oriented website" is any "publicly accessible website that publishes material harmful to minors, if at least one-third (1/3) of the images and videos published on the website depict material harmful to minors." *Id.* § 24-4-23-1. WebGroup and NKL own and operate websites that make pornographic videos available online. (Dkt. 128 at 3).

Plaintiffs, including WebGroup and NKL, brought this action against the Attorney General seeking declaratory and injunctive relief against enforcement of Indiana's age verification law. (*See* Dkt. 1). After some procedural acrobatics that need not be recited in full, the only remaining Plaintiffs are WebGroup and NKL, and their only claim is that Indiana's age verification law violates § 230 of the Communications Decency Act. The Attorney General countersued, alleging that WebGroup and NKL are violating Indiana's age verification law. WebGroup and NKL, now Counter-Defendants, move to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II.    Discussion

Counter-Defendants argue that the Attorney General's counterclaims should be dismissed for three reasons.  First, Indiana's age verification law is unconstitutionally vague because it fails to state how the "one-third" threshold is calculated.  Second, the Attorney General fails to plausibly allege that Counter-Defendants are in violation of the one-third rule.  And third, the Communications Decency Act preempts Indiana's age verification law.  The court begins with the Communications Decency Act.

### A.    Section 230 of the Communications Decency Act

47 U.S.C. § 230(c)(1) provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Many circuit courts treat § 230(c)(1) as a grant of immunity, but the Seventh Circuit has held that "Section 230(c)(1) 'does not create an immunity of any kind.'"  *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 566 (7th Cir. 2023) (quoting *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010)) (internal quotation marks omitted).  Instead, the Seventh Circuit considers the statute an affirmative defense because it "limits who may be called the publisher of information that appears online."  *Id.* (quoting *StubHub*, 624 F.3d at 366).

Dismissal based on an affirmative defense should generally be raised in motion for judgment on the pleadings instead of a motion to dismiss.  *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025).  "A plaintiff 'ordinarily need not anticipate and attempt to plead around affirmative defenses,' but dismissal may be appropriate if 'the factual allegations in the complaint unambiguously establish all the

3

elements of the defense.'"  *G.G.*, 76 F.4th at 566 (quoting *Hyson, USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016)); *see also Holmes*, 141 F.4th at 822 ("[W]hen the face of the complaint 'admits all the ingredients of an impenetrable defense,' the plaintiff has pleaded himself out of court, and the district court may dismiss for failure to state a claim under Rule 12(b)(6)." (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)).  That rule acts as an exception, though, because dismissal based on an affirmative defense should generally be raised in motion for judgment on the pleadings instead of a motion to dismiss.  *Holmes*, 141 F.4th at 822.

The Attorney General argues that dismissal under Rule 12(b)(6) is inappropriate because § 230 acts as an affirmative defense.  In light of the exception identified above, the court may grant Counter-Defendants' motion only if the Attorney General pleaded himself out of court.  *See id.*  Section 230 precludes liability when "(1) the defendant is the 'provider or user of an interactive computer service,' and (2) the defendant is being 'treated as the publisher or speaker' of (3) 'information provided by another information content provider.'"  *G.G.*, 76 F.4th at 566 (quoting 47 U.S.C. § 230(c)(1)).

The parties do not dispute that Counter-Defendants qualify as providers of an interactive computer service.  The first element is therefore established, and the court need only consider the latter two elements.

The second element is met if the Attorney General's claim treats the Counter-Defendants as the "publisher or speaker" of information.  The Seventh Circuit has not addressed what it means to be a publisher of information, but other circuits have recognized that the term "publication" is "defined broadly."  *See, e.g., Calise v. Meta*

4

*Platforms, Inc.*, 103 F.4th 732, 738 (9th Cir. 2024).  "[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).  Essentially, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1070–71 (9th Cir. 2008).

The key question courts ask is "whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'"  *G.G.*, 76 F.4th at 567 (quoting *Barnes*, 570 F.3d at 1102).  Indiana's statute provides that "[a]n adult oriented website operator may not knowingly or intentionally publish an adult oriented website unless the adult oriented website operator uses a reasonable age verification method to prevent a minor from accessing the adult oriented website."  Ind. Code § 24-4-23-10.  And an "adult oriented website" is "a publicly accessible website that publishes material harmful to minors, if at least one-third (1/3) of the images and videos published on the website depict material harmful to minors."  *Id.* § 24-4-23-1.

The Attorney General argues that the State is not treating the Counter-Defendants as publishers.  Unlike a tort claim like defamation where the plaintiff seeks to hold the defendant liable for information they published, the Attorney General seeks to hold Counter-Defendants liable for failing to implement a reasonable age verification on their adult oriented websites.  Thus, the Attorney General argues, the State is not treating

Counter-Defendants as publishers because the duty that Counter-Defendants allegedly violated does not stem from their conduct as a publisher.

But the question is not solely whether the duty the plaintiff alleges defendant violated stems from their conduct as a publisher; the question also considers whether the duty stems from their "status" as a publisher. *See G.G.*, 76 F.4th at 567 (quoting *Barnes*, 570 F.3d at 1102). The duty to implement a reasonable age verification method only applies to an adult oriented website "that *publishes* material harmful to minors, if at least one-third (1/3) of the images and videos *published* on the website depict material harmful to minors." Ind. Code § 24-4-23-1 Thus, does the duty to implement a reasonable age verification method stem from Counter-Defendants' "status" as a publisher? *See G.G.*, 76 F.4th at 567. Counter-Defendants argue that the answer is yes.

The District of Montana addressed a similar argument in *Free Speech Coalition v. Knudsen*, 754 F. Supp. 3d 1037 (D. Mont. 2024). The Montana legislature passed an age verification statute functionally identical to Indiana's. *Id.* at 1046–47. The Montana statute required commercial entities "that knowingly and intentionally publish[] or distribute[] material harmful to minors" to implement a reasonable age verification method. *Id.* at 1046. The plaintiffs in *Knudsen* argued that Montana was trying to hold commercial entities liable as publishers in violation of § 230, and the State of Montana argued that the statute did not treat the plaintiffs as publishers or speakers, so there was no conflict with § 230. *Id.* at 1061. The court rejected Montana's argument, emphasizing that Montana's age verification statute punished commercial entities for "'publishing' material harmful to minors on their websites." *Id.* at 1062. Because "[s]ection 230 says

6

that interactive computer services providers are not publishers of third-party content," the court opined, "[i]t is difficult to see how these laws could be read in harmony with one another." *Id.*

Indiana's age verification law punishes adult oriented websites in the same way as Montana's age verification law. The law applies only to publishers of information, and they are punished for the act of publishing material harmful to minors. Whether that punishment is a traditional sanction or the requirement to implement reasonable age verification procedures, it is a punishment based on the adult oriented website's status as a publisher. *See* Ind. Code § 24-4-23-10. Accordingly, the Attorney General's counterclaims establish the second element for § 230 preclusion.

The third element for § 230 preclusion requires that the plaintiff treat the defendant as the publisher of information provided by another information content provider. Counter-Defendants argue that the alleged offending content is the "material harmful to minors" found on Counter-Defendants' website, and the Attorney General's counterclaim fails to include allegations that Counter-Defendants created or developed that material. Thus, they argue, the Attorney General's counterclaim is attempting to hold them liable for information provided by another information content provider.

As noted above, the Seventh Circuit considers § 230 an affirmative defense. "[P]leadings need not anticipate or attempt to circumvent affirmative defenses." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). Thus, the Attorney General was not required to plead that Counter-Defendants participated in the development or posting of content on their websites. Counter-Defendants object to this conclusion and point to

7

several cases where courts dismissed the complaint based on § 230 even though the motion was brought pursuant to Rule 12(b)(6) instead of 12(c).  They argue that there is "ample caselaw recognizing that Rule 12(b)(6) dismissal is appropriate even in the absence of allegations expressly checking off the Section 230 elements, including dismissing claims when a complaint is silent as to prong three."  (Dkt. 132 at 8–9).  Most of Counter-Defendants' citations are to cases outside this circuit, and while they can be persuasive, they are not controlling.  (*See* Dkt. 132 at 8–9 (collecting cases)).  The cases Counter-Defendants cite from within this circuit also fail to support their claim.

In *Day v. TikTok, Inc.*, the court found that the plaintiffs pleaded themselves out of court because the complaint included allegations that the alleged harmful content was posted by a third party, not the defendant.  No. 21 C 50129, 2022 WL 595745, at *2 (N.D. Ill. Feb. 28, 2022).  The same goes for *Collins v. Purdue University*, where the plaintiff alleged that third parties posted harmful comments about the plaintiff on the defendant's website.  703 F. Supp. 2d 862, 879 (N.D. Ind. 2010).  The plaintiffs in both cases specifically pleaded that the harmful content was posted by a third party, an allegation that is notably absent from the Attorney General's counterclaim.  Neither case supports Counter-Defendants' proposition that the court may dismiss "even in the absence of allegations expressly checking off the Section 230 elements."  (Dkt. 132 at 8).

Counter-Defendants chose to file a motion to dismiss under Rule 12(b)(6) rather than a motion for judgment on the pleadings under Rule 12(c).  That other courts may have granted a Rule 12(b)(6) dismissal in the absence of allegations establishing § 230's three elements is not a valid reason for this court to do the same.  The Seventh Circuit has

made clear that a Rule 12(b)(6) motion to dismiss based on § 230 may be granted only if the plaintiff pleads themselves out of court. *See G.G.*, 76 F.4th at 566. The Attorney General's counterclaim does not establish all three elements for § 230 preclusion. Dismissal under Rule 12(b)(6) is not warranted.

**B.     Void for Vagueness**

Counter-Defendants argue that the Attorney General fails to state a claim because Indiana's age verification law is unconstitutionally vague. Specifically, Counter-Defendants argue that the statute fails to define how the one-third threshold is calculated, preventing them from knowing how to comply with the law.

"The void-for-vagueness doctrine, as [the Supreme Court] ha[s] called it, guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018). "[T]he doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of" those in charge of enforcing it. *Id.* at 156. "If the challenged statute does not threaten First Amendment interests, its constitutionality is examined in light of the facts of the case at hand—i.e., on an as-applied basis—and any objections 'may be overcome . . . where reasonable persons would know that their conduct is at risk.'" *Leapers, Inc. v. Trarms, Inc.*, 203 F. Supp. 3d 969, 976 (S.D. Ind. 2016) (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)). Counter-Defendants do not raise a challenge under the First Amendment, so the court analyzes their claim as applied to the facts of this case.

Counter-Defendants contend that the one-third rule is vague because the statute does not provide a metric to measure compliance. They offer the following hypothetical in support:

> Consider, for example, a website that publishes eight five-minute clips of everyday television shows (*i.e.*, forty minutes of content) but one two-hour video of material the State thinks is "material harmful to minors." That website might comply with the One-Third Rule since the adult content is contained in only one of nine videos. But it might run afoul, since the run-time of the adult content is more than one-third of the total run time of all the videos.

(Dkt. 121 at 5). Counter-Defendants do not argue that their websites avoid the one-third rule under either interpretation described above. Instead, they argue that the Attorney General cannot "plead a plausible violation of the Act if [the State] does not provide the means to determine whether it applies to any given party." (*Id.*).

The Attorney General argues that the statute is not unconstitutionally vague because states "have always been permitted to legislate 'standards' which may be 'undoubtedly flexible,' later to be further explained by 'the officials implementing them,' who in turn are permitted to 'exercise considerable discretion.'" (Dkt. 128 at 9 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). To the Attorney General, the due process clause requires only a "sufficient[l]y definite warning as to the proscribed conduct when measured by common understanding and practices." *Roth v. United States*, 354 U.S. 476, 491 (1957) (quoting *United States v. Petrillo*, 332 U.S. 1, 8 (1947)). Putting his theory to work, the Attorney General contends that the age verification statute provides a "concrete numerical *rule* that gives [Counter-Defendants] more than fair notice that their conduct would fall under the Act's protections." (Dkt. 128 at 9–10). And

10

to reinforce his position, the Attorney General compares the age verification statute to statutes that proscribe "obscene" material, which provide "far *less* specific prohibitions than the Act's one-third rule." (*Id.* at 10).

Counter-Defendants fail to offer any facts detailing the content of their websites such that court can analyze whether Indiana's age verification statute is void as applied. Although their hypothetical presents a vagueness issue, it serves more as evidence for a facial challenge than an as applied challenge. Lacking the facts necessary to analyze the statute as applied, the court rejects Counter-Defendants' argument. The issue is better raised on summary judgment where the record is fully developed, and the court can engage with all the facts.

## C.    Failure to Allege a Violation of the One-Third Rule

Finally, Counter-Defendants argue that the Attorney General failed to state a claim because the counterclaim does not plausibly allege a violation of the one-third rule. Essentially, Counter-Defendants argue that the Attorney General recited the elements of Indiana's age verification law without providing sufficient factual allegations to support them.

Other than reciting the elements of Indiana's age verification law, the counterclaim states that an investigator visited Counter-Defendants' websites and saw fifty pornographic videos on the home page. (Dkt. 114 ¶¶ 33, 43). After clicking on a video, the investigator was taken to another webpage which contained more pornographic videos. (*Id.* ¶¶ 34, 43). The counterclaim also alleges that "[d]uring oral argument at the Supreme Court in *Paxton*, counsel for the [Counter-Defendants] conceded that it is a 'fair

11

guess' that more than 50 percent of his 'clients' materials' is 'obscene for minors,' and it 'may be correct' that more than 70 percent is obscene as to minors." (*Id.* ¶ 27). According to the Attorney General, that conclusively establishes that more than one-third of Counter-Defendants' websites contain material harmful to minors, and he adequately stated a claim upon which relief may be granted.

The first allegation—that an investigator saw fifty videos on Counter-Defendants' websites—does nothing to support the Attorney General's claim that more one-third of the content on Counter-Defendants' websites is material harmful to minors. There is no allegation concerning how many videos there are, or might be, on Counter-Defendants' websites. Nor is there an allegation that those fifty videos were 100% of the videos the investigator saw on the websites. Stating only that an investigator saw fifty pornographic videos on the home page is insufficient to state a claim that over one-third of the total images or videos on the websites was material harmful to minors.

That leaves the argument that in in *Free Speech Coalition v. Paxton*, 606 U.S. 461 (2025), Counter-Defendants' counsel admitted that one-third of their websites contained material harmful to minors. In *Paxton*, the attorney for Counter-Defendants (and "at least ten other clients" (Dkt. 121 at 6)) made several statements at oral argument about the volume of material harmful to minors on the plaintiffs' websites. The exchange occurred as follows:

> Justice Gorsuch: "What percentage of your clients' materials would be considered obscene for minors?"
>
> . . .

12

Mr. Shafer: "Your Honor, I cannot quantify that."

Justice Gorsuch: "More than 50 percent?"

Mr. Shafer: "I think that's a fair – – that – – that's a fair guess."

Justice Gorsuch: "More than 70 percent?"

Mr. Shafer: "Your Honors, I – – I don't want to go out on a limb.  I think that may be correct, but I can't . . . tell you with assurance."

Tr. of Oral Arg. at 20–21, *Free Speech Coal. v. Paxton*, 606 U.S. 461 (2025) (No. 23-1122).

The Attorney General never argues that these statements are judicial admissions, but Counter-Defendants contend the statements were not judicial admissions, so they cannot serve as a basis to support the Attorney General's complaint.  "[T]o qualify as judicial admissions, an attorney's statements must be deliberate, clear, and unambiguous." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010).  And "a judicial admission binds only in the litigation in which it is made."  *Higgins v. Mississippi*, 217 F.3d 951, 954 (7th Cir. 2000).  Otherwise, the statement may serve only as evidence.  *See id.*; *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir. 1996)).

Counter-Defendants present several arguments about why these statements cannot qualify as judicial admissions, but the fact that they were made in another case is determinative.  *See Higgins*, 217 F.3d at 954.  The statements, however, need not be judicial admissions to serve as a factual allegation sufficient to state a claim at the motion to dismiss stage.  Despite this distinction, the court finds that the Attorney General's allegations are insufficient to state a claim.  Alleging that Counter-Defendant's counsel in *Paxton* made a guess about the percentage of material harmful to minors on his clients'

13

websites over a year ago does little to support the claim that Counter-Defendants' websites violate the one-third rule.  Although complaints can be based on past conduct, the attorney's statement does nothing to indicate that Counter-Defendants were in violation of the rule at any time.  The attorney in *Paxton* represented over ten clients, and his statement was about the percentage of material on all their websites.  The court does not see how the statement "establishes that at least one-third (1/3) of the images and videos published on [Counter-Defendants'] websites depict graphic and obscene pornographic material that is harmful to minors."  (Dkt. 114 ¶ 27).

Absent facts about the state of Counter-Defendants' websites in the relevant period indicating that Counter-Defendants' websites violate the one-third rule, the court finds that the Attorney General's counterclaim should be dismissed.

Counter-Defendants argue that the court should not grant the Attorney General leave to amend because the deadline to amend the pleadings has passed and the counterclaim is "deficient as a matter of law."  (Dkt. 121 at 14).  The court finds that the Attorney General should be granted leave to amend.  The counterclaim was filed after the Amended Case Management Order was entered, and amendment would not substantially alter the claims raised against Counter-Defendants.  Additionally, the counterclaim was not deficient as a matter of law; rather it was deficient as a matter of fact.  Accordingly, there is good cause to grant amendment.

## III.    Conclusion

For the reasons addressed above, Counter-Defendants motion to dismiss is

**DENIED**.  (Dkt. 120).  The Attorney General has up to and including **July 31, 2026**, to

file an amended complaint.

**IT IS SO ORDERED** this 13th day of July 2026.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribute Electronically to Registered Counsel of Record.