**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| WEBGROUP CZECH REPUBLIC, A.S.; NKL ASSOCIATES, S.R.O., | § | |
| | § | |
| *Plaintiffs / Counter-Defendants,* | § | |
| | § | |
| v. | § | Case No. 1:24-cv-00980-RLY-MG |
| | § | |
| TODD ROKITA, in his official capacity as Attorney General of the State of Indiana, | § | |
| | § | |
| *Defendant / Counter-Plaintiff.* | § | |

**COUNTER-DEFENDANTS' BRIEF IN SUPPORT OF THEIR RULE 12(B)(6) MOTION TO DISMISS COUNTER-PLAINTIFF'S AMENDED COUNTERCLAIMS**

Counter-Defendants WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. file this Brief in Support of Their Motion to Dismiss the Amended Counterclaims of Counter-Plaintiff Todd Rokita, in his official capacity as Attorney General of the State of Indiana, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The State's original counterclaims sought to enforce an Indiana law requiring website operators to either cull and eliminate "publishe[d] [third-party] material" where "at least one-third (1/3) of the images and videos" on the website constitute "material harmful to minors" or implement an age-verification system that requires all visitors to disclose personal information to verify they are at least eighteen years old. Failure to abide by this "One-Third Rule" imposes the burden of age verification on website operators and potential civil penalties and injunctive relief for non-compliance. The Court previously granted Counter-Defendants' motion to dismiss the State's original counterclaims because the State did not plead a plausible violation of the One-Third Rule.

The State's Amended Counterclaims fail for the same reason. The State now adds pages of allegations regarding its purported "investigation" of Counter-Defendants' websites. The State says that one website contained thousands of pages of "adult content," that its investigator viewed certain pages, categories, tabs, and channels that contained pornographic content and certain tags that described obscene material, and that its investigator clicked through thousands of pages containing pornographic content. But nowhere in its lengthy description of its investigation does the State adequately plead what this Court said was required: "[T]hat over one-third of the *total* images or videos on the websites was material harmful to minors." That dooms the State's Amended Counterclaims, and they should be dismissed pursuant to Rule 12(b)(6) without leave to amend.

## **BACKGROUND**

On March 13, 2024, the Indiana governor signed into law Senate Bill 17 (the "Act"). The Act first prohibits "an adult oriented website operator" from "knowingly or intentionally publish[ing] an *adult oriented website* unless the adult oriented website operator uses a reasonable age-verification method to prevent a minor from accessing the adult oriented website." Dkt. 141, Am. Countercl. ("ACC"), ¶ 16 (citing Ind. Code § 24-4-23-10 (emphasis added)). The Act then defines "adult oriented website" as "a publicly accessible website that publishes material harmful to minors, if at least *one-third (1/3) of the images and videos published on the website depict material harmful to minors*." ACC, ¶ 18 (citing Ind. Code § 24-4-23-1 (emphasis added)). The Act also defines "material harmful to minors" as "matters or performances" that:

(1) describe or represent, in any form, nudity, sexual conduct, sexual excitement, or sadomasochistic abuse;

(2) considered as a whole, appeal to the prurient interest in sex of minors;

(3) are patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors; and

(4) considered as a whole, lacks serious literary, artistic, political, or scientific value for minors.

ACC, ¶ 19 (citing Ind. Code §§ 24-4-23-3; 35-49-2-2).

At bottom, the Act requires certain website operators to (1) actively monitor all content on their sites to ensure that less than one-third of all "images and videos published" on their website depict what the State deems "material harmful to minors," or (2) require age verification before publishing third-party content. ACC, ¶¶ 16-21. Unlike similar statutes from other states, the Act conspicuously omits any explanation of how a website operator should calculate the proportion of purportedly harmful material on its website to determine whether it falls within the Act's ambit. Yet a failure to comply with the Act exposes a website operator to stiff penalties, including monetary sanctions and injunctive relief. ACC, ¶ 21.

Counter-Defendants have challenged the Act on constitutional grounds since its inception. Dkt. 1. The Court initially enjoined the Act on First Amendment grounds. Dkt. 35. But the Seventh Circuit vacated that order and remanded the case with "instructions to enter judgment for [the State] with respect to the claim under the First Amendment" in light of the Supreme Court's decision in *Free Speech Coalition v. Paxton*, 606 U.S. 461 (2025), where the Court reversed a preliminary injunction prohibiting the enforcement of Texas's age verification law, finding that the statute likely survived First Amendment scrutiny. Since then, Counter-Defendants have maintained their claim that the Act is preempted and barred by 47 U.S.C. § 230 ("Section 230"). Dkt. 105.

In December 2025, the State amended its answer and added two counterclaims seeking to enforce the Act (specifically Indiana Code § 24-4-23-10) against NKL (Count 1) and WebGroup (Count 2) (the "Counterclaims"). Dkt. 114, ¶¶ 50-63. And the next month, Counter-Defendants moved to dismiss the Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6) on

vagueness, plausibility, and preemption grounds. *See generally* Dkt. 121. This Court granted that motion. *See* Dkt. 138; Dkt. 142.

While the Court held that the constitutional clarity of the Act (as applied) would be "better raised on summary judgment," *id.* at 11, and that Section 230 preemption was likewise more appropriate for summary judgment (although two of the three elements were established from the pleadings alone), *id.* at 8-9, the Court held that "[a]bsent facts about the state of Counter-Defendants' websites in the relevant period indicating that Counter-Defendants' websites violate the one-third rule, the court finds that the [State's] counterclaim should be dismissed." *Id.* at 14. The Court nevertheless granted the State leave to amend so that the State could make another attempt at alleging a violation of the Act's One-Third Rule. *Id.* And on July 31, the State amended its Counterclaims (the "Amended Counterclaims"). *See generally* ACC. Because the Amended Counterclaims still fail to allege facts sufficient to show a violation of the Act, the Court should dismiss the State's Amended Counterclaims with prejudice pursuant to Rule 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012). A plaintiff must allege facts that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## **ARGUMENT**

No one disputes that the Act only applies if at least one-third of *all* images and videos published on Counter-Defendants' websites depict material harmful to minors (the "One-Third Rule"). *See* ACC, ¶ 18 (citing Ind. Code § 24-4-23-1). The Court recognized as much when it granted Counter-Defendants' motion to dismiss the original Counterclaims because the State failed to allege facts sufficient to show "that over one-third of the *total* images or videos on the websites was material harmful to minors." Dkt. 138 at 12 (emphasis added); Dkt. 142.

In doing so, the Court rejected the State's reliance on rote recitation of "the elements of Indiana's age verification law." *Id.* at 11. The Court also rejected the State's reliance on the oral argument in *Free Speech Coalition v. Paxton*, No. 23-1125 (2025), recognizing that counsel's statement there "does nothing to indicate that Counter-Defendants were in violation of the rule at any time." Dkt. 138 at 14. The State recycles those allegations in its Amended Counterclaims, which of course is insufficient. *Id.* at 11-15.

That leaves the State's now-supplemented allegations regarding its purported "investigation" of Counter-Defendants' websites. The Court previously rejected the State's allegations on that point, recognizing that "[s]tating only that an investigator saw fifty pornographic videos on the home page is insufficient to state a claim that over one-third of the *total* images or videos on the websites was harmful to minors." *Id.* at 12 (emphasis added). The State's Amended Counterclaims expand on that investigation, but they fail for the same reason as the State's original Counterclaims: Nowhere in the State's lengthy new allegations does it plead in a non-conclusory fashion that more than one-third of the *total* content across Counter-Defendants' websites contains material harmful to minors. ACC, ¶¶ 30-92.

The State starts by alleging that the "entire website" for one site "contained 20,000 pages of 'adult content'" and that its investigator visited "several pages" on that site, "each of which included at least one-third (1/3) pornographic images or videos." *See, e.g.*, ACC, ¶¶ 72, 74-75. But stating the number of pages with purported "adult content" on one website, only some of which were viewed by the State's investigator, "does nothing to support the [State's]" enforcement claims because it fails to account for the "total images or videos"—with and without "adult content"—across the website. *See* Dkt. 138 at 12. Nor is it even clear from the Amended Counterclaims that "adult content" satisfies the statutory test for "material harmful to minors." *See* ACC, ¶ 19 (citing Ind. Code §§ 24-4-23-3; 35-49-2-2). And the State's conclusory assertion that a few pages (out of the thousands alleged) contained more than one-third pornographic material says nothing about the *total* amount of such content on Counter-Defendants' websites, as required. *See* Dkt. 132 at 12; *see also Haber Land Co. v. Am. Steel City Indus. Leasing, Inc.*, 388 F. Supp. 3d 1050, 1052 (S.D. Ind. 2019) ("The Court may not accept … conclusory allegations as sufficient to state a claim for relief.") (citation omitted).

That fundamental flaw is embedded throughout the Amended Counterclaims. The State alleges that its investigator "navigated" to several "categories," "tabs," and "channels" on Counter-Defendants' websites where the video previews or thumbnails "depicted pornographic content." *See, e.g.*, ACC, ¶¶ 35, 38. For some (but not all) of this limited group of pages, the State again tacks on the same conclusory boilerplate that this Court has already rejected, Dkt. 138 at 11: "[t]he content included in this category was over one-third (1/3) material harmful to minors." *See, e.g.*, ACC, ¶¶ 38, 40 ("The investigator also clicked the 'pornstars' hyperlink. At least one-third (1/3)

of the images displayed on the 'pornstars' page were pornographic.").[1] That too says nothing about the *total* amount of such content on Counter-Defendants' websites. *See* Dkt. 132 at 12.

The State similarly describes its review of the "'tags' section from" one of Counter-Defendants' websites, alleging that "at least 800 of the 2,000 tags … described content that is unquestionably obscene." *See, e.g.*, ACC, ¶ 84. But those descriptions of text are not "images and videos" as described in the One-Third Rule. *See id.*, ¶ 18 (citing Ind. Code § 24-4-23-1). The State also lists the number of videos contained in certain alleged categories and the number of search results listed for certain searches. *See, e.g.*, ACC, ¶¶ 49 ("The State's investigator also searched for 'girls gone wild,' which returned 58,652 results."), 52 ("The 'exercise' category had 1,993 videos.").[2] But again, those allegations say nothing about the *total* amount of material harmful to minors on Counter-Defendants' websites, much less how that numerator compares to the denominator of total overall content on the websites. *See* Dkt. 132 at 12.

Finally, the State alleges that its investigator "clicked through more than 7,000 pages"—out of an alleged "11,848 pages"—on one website and that, of those 7,000 pages, "over one-third (1/3) of the content displayed on each page depicted material that is harmful to minors." ACC, ¶ 78. That still says nothing about the other 5,000 pages on the website, each of which would have to also exceed the one-third threshold for there to be an actionable One-Third Rule violation. ACC, ¶ 18 (citing Ind. Code § 24-4-23-3). And regardless, these allegations do not move the needle for the State because the Act requires the State to establish that "one-third (1/3)

---

[1] Similar allegations are littered throughout the Amended Counterclaims. *See, e.g.*, ACC, ¶¶ 48, 51, 55, 57-58, 81, 85, 87.

[2] *See also* ACC, ¶¶ 36-37, 43, 48, 51-53, 57, 78-80, 84-85, 87.

of the images and videos published on the website depict material harmful to minors"—not one-third of the site's *webpages*. ACC, ¶ 18 (citing Ind. Code § 24-4-23-1).

If anything, the State's deficient Amended Counterclaims highlight the Act's vagueness problems. While the lack of constitutional clarity in the Act may be a due process question for another day, *see* Dkt. 158 at 10-11, it also confirms the Rule 12(b)(6) deficiencies in the Amended Counterclaims because it shows the futility of the State's continued efforts to plead a violation of the Act. Nowhere does the State allege how it measured the purported non-compliance with the One-Third Rule (*i.e.*, by file size, run time, number of files, etc.). *See* Dkt. 121 at 5 (original Motion). Nowhere does the State allege "how many videos there are … on Counter-Defendants' websites." Dkt. 138 at 12. And nowhere in the State's lengthy amendment does it allege in non-conclusory fashion the total ratio between approved and disapproved content, however measured. *See Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 969 (N.D. Ill. 2009) ("[Plaintiff's] lengthy complaint relies heavily on a few conclusory allegations" that "we are not required to accept … at face value"). That's deficient.

The State's Amended Counterclaims fail to state a claim, and further amendment should be denied as futile. The State has already been given an "opportunity to try to correct the deficiencies the court identified." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 518 (7th Cir. 2015). The State has shown that it is unable to do so even after its purportedly extensive investigations of the sites. "Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). This Court granted the State its one free amendment, and the State's response confirms that the problem is not curable. The Court should dismiss the Amended Counterclaims with prejudice.

## CONCLUSION

For the foregoing reasons, Counter-Defendants WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. respectfully request that the Court grant their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss the State's Amended Counterclaims.

Date: August 28, 2026

Respectfully submitted,

**WHITE & CASE LLP**

By: */s/ Sean Gorman*
Sean Gorman (*pro hac vice*)
Jacqueline Chung (*pro hac vice*)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Facsimile: (713) 496-9701
sean.gorman@whitecase.com
jacqueline.chung@whitecase.com

**ATTORNEYS FOR PLAINTIFFS WEBGROUP CZECH REPUBLIC, A.S.; NKL ASSOCIATES S.R.O**

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Brief was served on all parties of record by electronic means through the CM/ECF system.

/s/ *Sean Gorman*
Sean Gorman