**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| WEBGROUP CZECH REPUBLIC, A.S.; NKL ASSOCIATES, S.R.O., | ) | |
| *Plaintiffs/Counterclaim Defendants*, | ) | |
| v. | ) | No. 1:24-cv-00980-RLY-MG |
| TODD ROKITA, in his official capacity as the Attorney General of the State of Indiana, | ) | |
| *Defendant/Counterclaim Plaintiff*. | ) | |

**DEFENDANT/COUNTER-PLAINTIFF'S BRIEF IN OPPOSITION TO PLAINTIFF/COUNTER-DEFENDANTS' RULE 12(B)(6) RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 2

I. Factual Background .......... 2

II. Procedural Background .......... 4

LEGAL STANDARD .......... 7

ARGUMENT .......... 8

I. The Attorney General Has Stated A Plausible Claim for Relief .......... 8

A. The Attorney General Plausibly Alleged that the Pornographers' Websites Trigger the Act's Coverage .......... 8

B. Accepting Counter-Defendants' Position Would Effectively Nullify the Act .......... 12

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alioto v. Town of Lisbon*,
651 F.3d 715 (7th Cir. 2011) ....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................7

*Bausch v. Stryker Corp.*,
630 F.3d 546 (7th Cir. 2010) ....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................7

*Free Speech Coal., Inc. v. Paxton*,
606 U.S. 461 (2025) ....................2, 5

*Free Speech Coal., Inc. v. Rokita*,
738 F. Supp. 3d 1041(S.D. Ind. 2024) ....................5

*Free Speech Coal., Inc. v. Rokita*,
No. 24-2174, 2024 WL 3861733 (7th Cir. Aug. 16, 2024) ....................5

**Rules and Codes**

FED. R. CIV. P.
8(a)(2) ....................10

2024 Ind. Legis. Serv. P.L.
98-2024 (S.E.A. 17) ....................4

IND. CODE
§ 24-4-23-1 ....................4, 13
§ 24-4-23-10 ....................4
§ 35-49-2-2 ....................4

**Other Authorities**

Niki Fritz et al., *A Descriptive Analysis of the Types, Targets, and Relative Frequency of Aggression in Mainstream Pornography*, 49 ARCHIVES OF SEXUAL BEHAV. (2020) ....................3

Aina M. Gassó & Anna Bruch-Granados, *Psychological and Forensic Challenges Regarding Youth Consumption of Pornography: A Narrative Review*, 1 ADOLESCENTS. (2021) ....................3

Byrin Romney, *Screens, Teens, and Porn Scenes: Legislative Approaches to Protecting Youth from Exposure to Pornography*,

45 VT. L. REV. (2020) ..........................................................................2, 3, 4

Chiara Sabina et al., *The Nature and Dynamics of Internet Pornography Exposure for Youth*, 11 CYBERPSYCHOLOGY & BEHAV. (2008) .......................................4

Defendant/Counter-Plaintiff Todd Rokita, in his official capacity as Attorney General of the State of Indiana, brought counterclaims against Counter-Defendants WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. (collectively the "Pornographers"). This Court previously dismissed the Attorney General's Counterclaims and granted leave to amend so that the Attorney General could allege facts showing that the State's statute requiring age verification for websites with a certain threshold of content harmful to children applies to Pornographers' websites. *See* Entry Denying Counter-Defs.' Mot. to Dismiss, Doc. 138 (July 13, 2026) ("MTD Order").[1] The Attorney General has now done so. *See* Am. Answer, Doc. 141 (July 31, 2026) ("Counterclaims"). Yet the Pornographers have filed another Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Pls.' Br. in Support of Mot. to Dismiss, Doc. 146 (Aug. 28, 2026) ("MTD"). The Attorney General files this Brief in Opposition.

**INTRODUCTION**

The Indiana legislature passed a law that requires all adult-oriented websites to implement a reasonable age-verification method. Roughly speaking, a website is adult-oriented if at least one-third of its images and videos both (a) depict nudity or sexual conduct, and (b) lack serious value for minors. The Pornographers operate pornography websites—including two of the top-50 most popular porn sites worldwide, XXNX.com and XVideos.com—that are undoubtedly "adult-oriented," *see* Counterclaims at 63 (¶ 101), and "pornographic," *id.* at 45 (¶ 4).

---

[1] The Court entered a separate order noting that the title and disposition of the order granting leave to amend contained a typographical error and should have indicated that the motion was granted, rather than denied. *See* Order Amending Docket Entry, Doc. 142 (July 31, 2026) ("The title of the Entry is amended to 'ENTRY GRANTING COUNTER-DEFENDANTS' MOTION TO DISMISS' instead of 'ENTRY DENYING COUNTER-DEFENDANTS' MOTION TO DISMISS.' The word 'DENIES' on page two is amended to 'GRANTS.' And the word "DENIED" in the conclusion is amended to 'GRANTED.'").

The Pornographers nonetheless have not complied with the law. Initially, they claimed that the law violates the First Amendment, but the Supreme Court disagreed. It ruled that States have a "compelling" interest in "shielding children from sexual content," and that "requiring age verification online is plainly a legitimate legislative choice." *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 496 (2025) (quotation marks omitted). After the Supreme Court's decision, the Pornographers *still* refused to implement age verification, so the Attorney General brought these counterclaims against them.

Now, the Pornographers seek dismissal of the counterclaims on one narrow ground. The Pornographers contend the counterclaims fail to plausibly allege that one-third of the material on their websites is harmful to minors. MTD at 5. This is simply not a case in which the application of the one-third rule is subject to meaningful debate. The Attorney General has plausibly alleged facts indicating that the law applies to Pornographers' websites. This Court should deny the motion to dismiss in full.

## BACKGROUND

### I. Factual Background.

The background to this controversy is well-known to the Court. *See, e.g.*, Defs.' Mem. in Opp'n to Pls.' Mot. for Prelim. Inj., Doc. 30, at 3–7 (June 24, 2024). In brief, online pornographic material is more accessible than ever before. *See* Counterclaims at 43–44 (¶ 2). Far from portraying "consensual, loving, healthy relationships," most of this pornography "teaches dominance, aggression, disrespect, and objectification." Byrin Romney, *Screens, Teens, and Porn Scenes: Legislative Approaches to Protecting Youth from Exposure to Pornography*, 45 VT. L. REV. 43, 43 (2020); *see* Counterclaims at 44 (¶ 2) ("Pornographic content emphasizes extreme forms of

obscenity, including sexual violence, choking, rape fantasies, sex slavery, and sex with teen girls.”).

The Pornographers’ sites are prime examples. Take XVideos, which is owned by counter-defendant Webgroup. *See* Counterclaims at 57 (¶ 64). According to one study, 35% of XVideos scenes contained physical aggression, almost exclusively against women. *Id*. at 44–45 (¶ 2); *see* Niki Fritz et al., *A Descriptive Analysis of the Types, Targets, and Relative Frequency of Aggression in Mainstream Pornography*, 49 ARCHIVES OF SEXUAL BEHAV. 3041, 3041 (2020). Unsurprisingly, when adolescents are exposed to this material, it shapes their development in unhealthy ways. *See* Counterclaims at 45 (¶ 3); *see also* Romney, *supra* at 53. For example, “research overwhelmingly supports the assertion that pornography normalizes sexual violence.” Romney, *supra* at 55; *see also id*. at 54 (noting that pornography use is “strongly correlated with sexual aggression in boys and sexual victimization in girls”); *id*. at 43 (“a 2019 study among tenth graders in the United States revealed that boys exposed to violent pornography were two to three times more likely to commit sexual violence against a dating partner”). Pornography use “is also related to the early occurrence of sexual intercourse, more experience with casual sex behavior, and riskier sex practices,” including “prostitution.” *Id*. at 53; *see* Counterclaims at 45 (¶ 3). And, more generally, “[y]outh who are exposed to pornography report lower degrees of social integration, increases in conduct problems, and higher levels of delinquent behavior.” Romney, *supra*, at 53 (cleaned up).

Despite these known harms, the Pornographers generally make their content available without meaningful age restriction. *See* Counterclaims at 45 (¶ 4); *see also* Aina M. Gassó & Anna Bruch-Granados, *Psychological and Forensic Challenges Regarding Youth Consumption of Pornography: A Narrative Review*, 1 ADOLESCENTS 108, 108–09 (2021). This makes “American youths’ exposure to pornographic content online … almost inevitable.” Romney, *supra* at 48.

Indeed, the average age of first exposure to pornographic material is commonly reported as eleven years old. *See* Counterclaims at 44–45 (¶ 2); *see also* Romney, *supra* at 48. And over 72 percent of adolescents (over 90 percent of boys) report viewing pornography online before reaching the age of 18. *See* Counterclaims at 44–45 (¶ 2); *see also* Chiara Sabina et al., *The Nature and Dynamics of Internet Pornography Exposure for Youth*, 11 CYBERPSYCHOLOGY & BEHAV. 1, 1 (2008).

To address these and other harms, Indiana enacted Senate Bill 17 ("SB17" or "the Act"),[2] which provides: "An adult oriented website operator may not knowingly or intentionally publish an adult oriented website unless the adult oriented website operator uses a reasonable age verification method to prevent a minor from accessing the adult oriented website." IND. CODE § 24-4-23-10. An "'[a]dult oriented website'" is any "publicly accessible website that publishes material harmful to minors, if at least one-third (1/3) of the images and videos published on the website depict material harmful to minors." *Id.* § 24-4-23-1. Material is harmful to minors, in turn, if:

> "(1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;
>
> (2) considered as a whole, it appeals to the prurient interest in sex of minors;
>
> (3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and
>
> (4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors."

*Id.* § 35-49-2-2.

**II. Procedural Background.**

On June 10, 2024, the Pornographers brought this action against the Attorney General, seeking declaratory and injunctive relief against enforcement of the Act. *See* Compl., Doc. 1 (June

---

[2] 2024 Ind. Legis. Serv. P.L. 98-2024 (S.E.A. 17), *codified at* IND. CODE § 24-4-23-1 et seq.

6, 2024) ("Compl.").[3] In relevant part, the Pornographers alleged that the Act: (1) is an unconstitutional restriction of speech, in violation of the First Amendment to the United States Constitution, *id.* ¶¶ 75–78; (2) is unconstitutionally vague, in violation of the Fourteenth Amendment to the United States Constitution, *id.* ¶¶ 79–83; and (3) is preempted by 47 U.S.C. § 230, *id.* ¶¶ 96–101. The Pornographers then moved for a preliminary injunction. *See* Pls.' Mot. for Expedited Prelim. Inj., Doc. 4 (June 10, 2024). This Court granted the Pornographers' motion, finding that the law violated the First Amendment. *See Free Speech Coal., Inc. v. Rokita*, 738 F. Supp. 3d 1041, 1057–58 (S.D. Ind. 2024), *vacated and remanded*, No. 24-2174, 2025 WL 2027434 (7th Cir. July 15, 2025), *op. clarified*, No. 24-2174, 2025 WL 2215894 (7th Cir. Aug. 1, 2025). This Court did not address the Pornographers' remaining claims.

After this Court granted the preliminary injunction, the Supreme Court rejected a First Amendment challenge to a Texas age-verification statute that is "functionally identical" to SB17. *Free Speech Coal., Inc. v. Rokita*, No. 24-2174, 2024 WL 3861733, at *1 (7th Cir. Aug. 16, 2024); *see Free Speech Coal. v. Paxton*, 606 U.S. 461. In doing so, the Court emphasized that "Texas's interest in shielding children from sexual content is important, even compelling," and that "requiring age verification online is plainly a legitimate legislative choice." *Free Speech Coal. v. Paxton*, 606 U.S. at 496 (citation and quotation marks omitted). The Seventh Circuit then vacated this Court's preliminary-injunction order with instructions to enter judgment for the Attorney

[3] The Pornographers were initially joined in this action by Free Speech Coalition and several other pornography companies. *See* Compl. ¶¶ 13–25. On September 30, 2025, this Court allowed those plaintiffs to dismiss their claims. *See* Entry on Pls.' Mot. for Voluntary Dismissal, Doc. 104 (Sep. 30, 2025). NKL and WebGroup elected to continue pressing their claims rather than dismissing. *See* Pls.' Statement in Resp. to the Court's Sep. 30, 2025 Order, Doc. 105 (Oct. 10, 2025).

General on the claim under the First Amendment. *Free Speech Coal.*, 2025 WL 2215894, at *1. The Act is therefore fully enforceable.

The Pornographers have nonetheless refused to comply. On July 23, 2025, an investigator employed by the Office of the Indiana Attorney General accessed XNXX.com (owned by NKL). *See* Counterclaims at 51 (¶¶ 30–31). No age verification was required. *Id*. at 51 (¶ 32). The XNXX.com homepage displayed at least 50 pornographic video previews that, when hovered over, depicted pornographic scenes of sexual intercourse. *Id*. at 51 (¶ 33). When the investigator clicked on one of the videos, it took her to a webpage with a pornographic video and "rows of other videos depicting pornographic scenes." *Id*. at 52 (¶ 34). When the State's investigator accessed XNXX.com again on August 12, 2025, age verification still was not required. *Id*. at 53 (¶ 42). The investigator replicated this exercise with XVideos (owned by Webgroup), and the result was the same. *See id*. at 57–59 (¶¶ 64–78).

The Attorney General therefore filed an amended answer asserting counterclaims against the Pornographers for failing to comply with state law. After Counter-Defendants filed a motion to dismiss those claims, this Court granted the motion but also granted leave to amend. MTD Order. This Court rejected most of the Pornographers' arguments. *Id.* In particular, the Court declined to find the Act void for vagueness, *id.* at 9–11, and declined to grant Section 230 immunity, *id.* at 3–9. But the Court granted dismissal on one narrow ground: The Court found that the Attorney General had not adequately alleged that the Pornographers' websites contain more than one-third content harmful to children as defined in the Act. *Id*. at 11; *see also id.* at 12 ("Stating only that an investigator saw fifty pornographic videos on the home page is insufficient to state a claim that over one-third of the total images or videos on the websites was material harmful to minors."). The Court granted leave to amend, however, so that the Attorney General could make further factual

allegations to establish that the Act applies. *Id.* at 14. The Court was clear: "the counterclaim was not deficient as a matter of law; rather it was deficient as a matter of fact." *Id*.

Accordingly, the Attorney General further investigated Pornographers' websites and filed amended counterclaims in line with the Court's opinion. The counterclaims again allege that the Pornographers have violated, and are violating, Indiana Code § 24-4-23-10 by knowingly operating adult-oriented websites without using a reasonable age verification method to prevent minor access. *See* Counterclaims at 51–62 (¶¶ 30–92). The counterclaims describe in detail the Attorney General's renewed investigation of Pornographers' websites and the overall categories of pornographic content versus other content available to any member of the public on the websites. *See, e.g.*, *id.*

The Pornographers now move again to dismiss the counterclaims, contending that the Attorney General has still failed to plausibly allege that the Act applies to them. The Attorney General now files this response.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), this Court must assume all allegations in the operative pleading are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is only whether the pleading contains factual allegations sufficient "to state a claim to relief that is plausible on its face." *Id*. at 570. A claim is plausible so long as it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Importantly, an affirmative defense "do[es] not justify dismissal under 12(b)(6)." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010) (quotation marks omitted). That is because a pleading "need not anticipate or attempt to circumvent affirmative defenses." *Id*. (citation omitted).

## ARGUMENT

### I. The Attorney General Has Stated A Plausible Claim for Relief.

To reach the impossible conclusion that their websites are not subject to the State's law—despite that they are explicitly and plainly *dedicated* to displaying an endless loop of hardcore pornography—the Pornographers blink reality and ignore the Attorney General's plausible allegations and evidentiary support. The Attorney General has far exceeded the modest burden to state a plausible claim at the pleading stage. Indeed, whether or not it constitutes a technical judicial admission, Counter-Defendants' concession before the Supreme Court that their websites contain enough pornography to be subject to the statute provides even further support. *See* Mot. to Dismiss Resp. at 11–13, Doc. 128 (Apr. 20, 2026).

#### A. The Attorney General Plausibly Alleged that the Pornographers' Websites Trigger the Act's Coverage.

Counter-Defendants' renewed motion ignores or misreads the Attorney General's allegations and rests on an implausible pleading standard that is contrary to Rule 8 and ordinary principles of notice pleading. At bottom, Counter-Defendants insist that the Attorney General must establish, at the pleading stage and with mathematical precision, the exact proportion of all content appearing on their websites, which contain millions, if not hundreds of millions, of pages, videos, and images. Rule 8 obviously does not require that type of precision.

The Amended Counterclaims plausibly allege that Counter-Defendants' websites satisfy the statutory threshold, which does not impose any kind of substantive requirement but simply determines whether or not the Act applies. The Attorney General outlined—in detail—the factual investigation undertaken by the Attorney General's Office and the evidence gathered in support of the allegation that the Pornographers' websites contain material harmful to minors far in excess of the one-third requirement. The Counterclaims allege, among other things, that:

- XNXX.com's "tags" webpage displayed approximately 2,000 total categories of content available on the website. Counterclaims at 53 (¶ 44). At least 800 of those total 2,000 categories, or approximately 40%, described content that is unquestionably pornographic, including categories such as "Cum in mouth," "Anal Sex," "Big Cock Porn," "Straight in the Ass," "Fuck Her Hard," and "Piss in Ass." *Id.* at 53–54 (¶ 45).
- The website contained approximately 104 million *total* tags identifying various types of content for users, and approximately 66 million of those tags, or roughly 63%, described unquestionably pornographic content. *Id.*
- Even categories with seemingly neutral titles contained predominantly pornographic content. For example, the "exercise" category contained 1,993 videos, and more than one-third were pornographic. The "chat" category contained 11,899 videos, a majority of which were pornographic. *Id.* at 55 (¶52).
- The investigator reviewed more than 200 pages associated with the "family" category and found the content to be more than one-third pornographic, observing not a single non-pornographic video in the "family" category. *Id.* (¶ 53).
- Since July 23, 2025, on every date when the State's investigators have accessed XNXX.com, virtually all of the content the investigator was able to view was clearly pornographic. *Id.* at 56 (¶ 59).
- Likewise, XVideos.com "is a pornography website" and since July 23, 2025, investigators consistently observed that "virtually all" visible content was clearly pornographic. *Id.*at 62 (¶ 88).
- On July 17, 2026, the XVideos.com website contained 11,848 pages of pornographic content. The State's investigator viewed thousands of pages of XVideos.com. The

investigator clicked through more than 7,000 pages and confirmed that over one-third (1/3) of the content displayed on each page depicted material that is harmful to minors either in the form of a pornographic video or an advertisement that was pornographic in nature. *Id.* at 58 (¶ 78).

- The XVideos.com website contained 2,000 different "tags", each signifying a different pornographic category. Amongst other categories, "anal-porn" had 150,397 videos, "ass-fuck" had 212,074 videos, "boy-fuck-girl" had 167,280 videos, "cum-on-pussy" had 308,856 videos, and "fat-pussy" had 121,277 videos. *Id.* at 59–60 (¶ 79).
- Even when searching for tags without an obvious sexual or pornographic connotation, the search returned pornographic results. For example, when the State's investigator accessed the "punk" tag, it returned 663 results. All of the videos the investigator saw in the "punk" category were pornographic. The first video the investigator accessed in this category displayed a scene of masturbation, oral sex, and group sex. Below that video were twelve (12) more pornographic videos. The State's investigator also accessed the tag "shoplifting", which returned 4,621 results. When the investigator clicked on a video in this category, it displayed a scene of sexual intercourse. Below that video were twelve (12) more pornographic videos. *Id.* at 60 (¶ 80).

The Court is required to accept these factual allegations as true and draw reasonable inferences in the Attorney General's favor. And read with any measure of charity at all, these detailed allegations make clear that the Pornographers are simply wrong to assert that the Attorney General's allegations—*already* supported by evidence garnered in an investigation by the Attorney General's Office—are somehow "conclusory." MTD at 5, 6, 8.

Rule 8 requires the Attorney General to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Counter-Defendants' motion to dismiss, by contrast, is premised on transforming this notice-pleading requirement into a

demand that the Attorney General come into court *at the pleading stage* with a detailed and comprehensive catalogue of every image or video on XVideos.com that quantifies, with mathematical precision, the percentage that contain pornographic content. Rule 8 requires nothing of the kind. The Attorney General has squarely alleged that the porn sites in question contain more than one-third material harmful to minors, and he has further included detailed factual allegations setting forth the comprehensive investigation he undertook to arrive at that conclusion. That more than suffices to give the Pornographers notice of the nature of the Attorney General's claims against them.

Counter-Defendants largely ignore the Attorney General's detailed allegations supporting his conclusion that the Act applies. They do argue that the "tags" on their websites are not themselves images or videos, but that misses the point entirely: the Attorney General does not describe Pornographers' website "tags" because tags are images or videos. Rather, tags provide Counter-Defendants' *own* descriptions and categorization of the *overall* body of images and videos that appear on their websites. In other words, tags represent how Counter-Defendants themselves characterize their content and divide it into thematic categories. The Attorney General's Counterclaims allege that the tags page displayed the categories of content available on the website, Counterclaims at 53 (¶ 44), and of those categories, over one-third of the content was on its face pornographic. Thus, this proportion is based on Counter Defendants' *own* classification of the overall content on their websites.

But the allegations do not stop with tags. The State's investigators also substantively reviewed underlying categories and videos—including the most facially benign categories, such as "exercise," "chat," and "family," which one might not expect, on the face of the category title, to contain pornographic material. And yet even those categories also contained more than one-

third pornographic content. *Id.* at 55 (¶¶ 50–53). Thus, Counter-Defendants' own tag characterizations are further supported by direct observation of the underlying content itself, even in categories that might not appear to be obviously pornographic.

In the end, the Pornographers never actually claim that their websites—aptly titled XNXX.com and Xvideos.com—would not meet the Act's one-third rule. Nor could they. The Pornographers operate some of the most popular porn sites in the world—websites explicitly dedicated to disseminating pornography—and it would strain credulity to argue that they have not succeeded in their aim of distributing content that is at least one-third pornographic.[4]

**B. Accepting Counter-Defendants' Position Would Effectively Nullify the Act.**

For the reasons just discussed, the Attorney General has plainly alleged sufficient factual material to plausibly state a claim. Counter-Defendants' arguments to the contrary not only flout the modest requirements of Rule 8; they are premised on a misreading of the Act—a blatant caricature of the law that, if accepted, would render it effectively unenforceable and contradict both its plain text and evident purpose.

The Pornographers misread the Act right out of the starting gates. They repeatedly treat the one-third requirement as though it were a substantive prohibition that must itself be "violat[ed]." MTD at 1, 4, 5, 7, 8. But the one-third provision merely determines whether the Act applies. As such, Counter-Defendants' repeated references to whether the State has sufficiently alleged a

[4] The motion to dismiss should be denied in full. In the alternative, however, the Court should again grant leave to amend before dismissing the Attorney General's enforcement suit if there is any issue with the factual support already alleged. This Court has already determined that the Attorney General's claims are not deficient as a matter of law. MTD Order at 14. And the deadline for amendment having passed is not dispositive where *leave* to amend is at issue. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (discussing standards for granting leave to amend after deadline in scheduling order has passed). That is especially so where, as here, the Amended Case Management Order was entered several months before the Attorney General even filed these Counterclaims. *See* Am. Case Mgmt. Plan, Doc. 92 (Aug. 27, 2025).

"violation of the One-Third rule" misconstrues the content of the Act. *Id.* at 1. Simply put, there is no standalone "one-third rule" to violate. *Id.* Rather, the provision is a threshold requirement designed to ensure that the Act does not sweep too broadly and capture websites containing only incidental or occasional harmful material.

More fundamentally, under Counter-Defendants' theory, even websites devoted almost entirely to disseminating porn videos could evade the Act's reach unless the State can determine with mathematical certainty—at the *pleading stage*—the *precise ratio* of every total image and video hosted across effectively infinite collections of content. That is an impossible task, and nothing in the Act requires it. The Act, in straightforward prose, requires age verification for any "publicly accessible website . . . if at least one-third (⅓) of the images and videos published on the website depict material harmful to minors." IND. CODE 24-4-23-1. Nothing in this language—and nothing anywhere else in the Act—requires the Attorney General to produce the kind of comprehensive quantification Defendants demand. Indeed, even at summary judgment or trial, nothing in the law requires a comprehensive catalogue of every video on the porn site in question. Instead, whether a website has at least one-third material that is harmful to minors is plainly a fact that can be proved in the same way as any other disputed adjudicative fact: through any competent, relevant, and material evidence tending to show that it is more likely true than not. That emphatically includes the results of a systematic survey similar to the one conducted by the Attorney General's investigator here. And at a bare minimum, the Act plainly does not require the Attorney General to have comprehensively catalogued every video on Counter-Defendants' porn sites *before he even comes into court*, so that he can produce this type of systematic evidence *in his complaint*. Such a requirement would effectively render the Statute a nullity—enforceable, if at all, only against the smallest and least trafficked pornographic websites.

If the Act cannot be applied to websites such as XNXX.com and XVideos.com, it is difficult to imagine any website to which it could apply. The statute's threshold requirement cannot be transformed into an impossible evidentiary burden that forecloses enforcement of a duly enacted remedial statute.

**CONCLUSION**

This Court should deny the motion to dismiss in full.

Date: October 2, 2026

Respectfully submitted,

Theodore E. Rokita, Indiana Attorney General

By: /s/ *James A. Barta*
James A. Barta
Solicitor General
Douglas S. Swetnam
Section Chief, Data Privacy & ID Theft Unit
Alyssa A. Rogers
Jackson K. Yerkes
Deputy Attorneys General
Office of the Indiana Attorney General
302 W. Washington St., IGCS 5th Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
Email: James.Barta@atg.in.gov

David H. Thompson*
Peter A. Patterson*
Brian W. Barnes*
Megan M. Wold*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue NW
Washington, DC 20036
Phone: (202) 220-9600

Fax: (202) 220-9601
dthompson@cooperkirk.com

*Counsel for Defendant Todd Rokita*

*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of October 2026, a true and correct copy of the foregoing was filed electronically and is available for viewing and download from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

*/s/ James A. Barta*
James A. Barta